## WELLBORN, ET AL. V. TILLER, ET AL.

1. When a bill is multifarious, and is not demurred to for this cause, the defect will not be noticed in an appellate court.
2. A general demurrer, without any special cause assigned, has the effect only to turn the inquiry upon the equities of the bill.
3. When the bill charges a false and fraudulent representation is made by the defendant, and his answer asserts an ability to comply with the representation, this puts him on proof of his ability as asserted.

4. When the allegation is, that a party falsely and fraudulently represented himself and others as invested with title by means of a conveyance from another, and the answer asserts that such a title existed, it is incumbent on the defendant to show it, otherwise the allegation of the bill will be taken as admitted.

5. When a party is induced to give a note by false representations of the existence of a fact, and after judgment goes into equity for relief, on the ground of ignorance of the false representations, if the false representations are admitted, it is incumbent on those who made them to show their truth, or otherwise that the plaintiff knew they were false previous to the judgment.

6. When a *pro confesso* decree is taken, and is not impeached as irregular, it obviates the necessity of proof of the allegations of the bill against the defendant who neglects to answer.

Writ of Error to the Court of Chancery for the Eighth District.

THE case stated by the bill, after divesting it of superfluous matter is this:

In April, 1838, one John McMillan, then representing himself as a man of wealth, and able to comply with his contracts, agreed to purchase from Allen B. Tiller, certain tracts of land for the price of $2000—of this, $500 was to be paid, one half in six months from the time of purchase, and the other half on the 1st January next afterwards. The remaining $1500 was to be paid by his conveying good fee simple titles to two lots in the town of Irwinton. McMillan falsely and fraudulently represented that he was able to make Tiller a good fee simple title to these lots. Confiding in his promise to do so, the latter conveyed to him the title for the lands contracted to be sold. The bill charges that McMillan has never paid any thing upon the purchase for the lands, and was entirely unable to comply with his contract to convey titles to the Irwinton lots; the only claim he had to them being a conditional purchase, which has never been perfected, on account of his inability to make payment to the proprietors, who subsequently sold them to other persons. The bill also charges a sale by Tiller to McMillan of corn, fodder, bacon, &c. to the value of $300, which the latter never has paid for,

and that possession of the land was delivered to him, and remained with him for one year, during which the possession was worth two hundred dollars. McMillan afterwards absconded.

About the 1st of October, 1839, one Churchill Gorman showed Tiller the conveyance made by him to McMillan and asserted that McMillan had sold some lands to himself William Wellborn, and William D. Grimes. Tiller protested against giving possession, as the titles had been obtained from him under fraudulent pretences. Gorman then told him that he must look to McMillan for the fulfilment of his contract, that he had parted with his right to the land; that McMillan had conveyed it to Wellborn, Grimes and himself, and they had nothing to do with McMillan, but would divide the land with Tiller, and sell the other half to him. Tiller not knowing the truth of the matter, but believing that McMillan had conveyed the lands as asserted by Gorman, agreed to give his promissory note for $750, at twelve months date, and to deliver up McMillan's two notes for $250 each, and accordingly did so, procuring Alexander Gordon and Angus McAllister to become his sureties. This note was, after its maturity, put in suit, in the names of William Grimes, and Gorman, and judgment rendered against all the makers. Tiller asserts that he was ignorant that McMillan had not conveyed the lands to Wellborn, Grimes and Gorman, until after the judgment was obtained.

The bill prays that the contract between Tiller and McMillan may be rescinded. That an account may be taken of what is due Tiller, on account of the use of the land, and for the sum due for the corn, bacon, &c., and for an injunction against the judgment obtained by Wellborn, Grimes, and Gorman.

Tiller, Gordon, and McAllister all join as complainants; McMillan, Wellborn, Gorman and Grimes are made defendants. McMillan's answer admits the contract for the purchase of Tiller's lands, corn, bacon, &c., but asserts that he paid for the corn, bacon, &c. in money; that he has taken up the notes given for part of the price of the land, and that he has always been, and is willing, and able to make good titles to the Irwinton lots. He also insists, that a complete

title to the same, vested in Tiller from him. He admits his insolvency at the time of answering, but denies he was so when the purchase was made, and for two years subsequently.

Wellborn's answer admits his belief of the contract between McMillan and Tiller for the purchase of the land, but asserts his ignorance whether McMillan paid the money, or conveyed titles to the lots as agreed upon. It asserts his understanding that the same title made by Tiller to McMillan, was conveyed by himself, Gorman and Grimes to Tiller, who since the conveyance, has appeared well satisfied with the repurchase. He asserts that McMillan parted with the title he obtained from Tiller, to himself, Gorman and Grimes, which fact is well known to Tiller, as he holds in substance the title he made to McMillan, which he got from the respondent. He asserts also, that when Gorman received the note of $750 from Tiller, it was taken in good faith, and under no pretence whatever to defraud him. He asserts his belief that Gorman received as good titles from McMillan for the land as Tiller made to him, and reconveyed the same in good faith to Tiller; the titles do not vest in McMillan, (as to what benefit a mere agreement can be to Tiller, the respondent could only give an opinion, but no facts,) McMillan, (at the time of the answer,) has now no title to the lands, as all that the respondent knows of was conveyed by himself, Gorman and Grimes, to Tiller. He asserts that Tiller went into possession of the land after it was purchased by the respondent, Gorman and Grimes. He advised his partners to give Tiller one half of the land, as he had fraudulently got possession of it, and as the trouble of dispossessing would be considerable. After this, Gorman sold the other half to Tiller, for a less sum than it was reasonably worth.

He asserts that he had to pay a large sum of money as security for McMillan, and that this was the consideration in the purchase from him. He denies all fraud and combination, and prays that his answer may be taken as a demurrer to the bill.

Grimes' answer denies any knowledge by him, of the contract between McMillan and Tiller. He admits that judgment was obtained on the note, as stated in the bill, and as-

serts the consideration for the note was the purchase by Tiller of one half of the land described in his bill.  He insists that Tiller has never offered to rescind this contract, and he believes he has lost more by McMillan than Tiller has, as Gorman, Wellborn and himself were sureties for McMillan to a large amount, and took the lands as a dernier resort.  As Tiller complained of being defrauded by McMillan, the respondent, with Wellborn and Gorman, gave him one half of the lands as a compromise, and settlement of all difficulties, and he voluntarily purchased the other half.  He denies all fraud, &c.

As to Gorman, the bill was taken *pro confesso.*

The depositions of several witnesses were read.  The substance of the testimony is this:  It proves the contract between McMillan and Tiller, substantially as set out in the bill, and identifies the Irwinton lots, as one upon which is the Eufaula house, and the other as in the possession of one Dunn; and these lots are shown to be in possession of persons claiming under the proprietors of Irwinton.  McMillan is proved to have been insolvent when the purchase was made, and continues so.  No evidence was submitted on the part of the respondents.

The chancellor decreed a rescission of the contract, on account of the false representations of McMillan, as to his solvency and ability to make good titles to the Irwinton lots. He also decreed a perpetual injunction as to the judgment obtained by Wellborn, Grimes and Gorman, and directed the defendants to pay the costs of the suit at law, as well as the suit in equity.

The defendants prosecute a writ of error from this decree, and assign it as error.

J. Cochran, for the plaintiffs in error, made the following points :

1. The defence now insisted on to the note might have been made at law ; and no sufficient excuse is shown why it was not so made.  Mere ignorance of a defence, when it could have been ascertained by ordinary diligence, will not authorize equity to relieve.  [Lee v. Insurance Bank, 3 Ala,

Rep. 21.] The diligence is not established or proved. [See Mock v. Candiff, 6 Por. Rep, 24 ; 1 Stew. 107.]

2. The note was given as a compromise of all difficulties and disputes, and with a full knowledge of all circumstances now alledged as fraudulent. [Standifer v. Standifer, 1 Stew. 532.]

3. There is no proof whatever as to the contract which was made between Tiller and Gorman when the note was given. The cause then must be determined as to this, upon the bill and answers. Gorman has not answered, and consequently, even if the answers will bind the others, there is no reason for a decree against him.

PECK & CLARK, contra.

GOLDTHWAITE, J.—1. This bill is certainly exceptionable, as it contains two distinct matters, which have no necessary connection with each other. It is evident that none of the defendants except McMillan, are interested, whether the contract of purchase between him and Tiller stands valid, or is rescinded. So too, the complainants, Gordon & McAllister, have no interest in this inquiry. On the other branch of the case, with relation to the note subsequently given to Gorman, McMillan seems to be entirely disconnected. Under these circumstances, if a demurrer had been interposed on account, of the bill being multifarious, the form of the bill must have been amended or dismissed.

2. This objection, however, was not taken in the court below ; it is true a general demurrer was put in by Wellborn, in his answer, but no special causes being assigned, it has the effect only, to turn the enquiry upon the equities of the bill. The 30th rule, for the regulation of practice in chancery, directs that all demurrers shall state the matters of objection ; [Clay's Digest. 616, § 30,] but this is no more than an iteration of the rule which previously governed the practice of all equity courts. [Mitford, 214; Story's Eq. Pl. § 455.] As the defendants, therefore submitted to go on to the hearing, without specifically raising this objection, the court ought not now to notice it, nor indeed would it have been adverted to, but for the necessity which there is to dis-

tinguish one part of the bill from the other, in the application of the admissions of the answers.

3. It will be seen that McMillan distinctly admits the contract with Tiller, and asserts that he was able and willing to make good titles to the Irwinton lots. Indeed, he goes further, and asserts that a complete title actually vested in Tiller, derived from himself. The charge ascertained from the entire bill is, that McMillan falsely and fraudulently represented he was able to make a good fee simple title, and that Tiller, confiding in his promises to do so, conveyed the land. This representation is not denied by McMillan, but is met by the assertion, as before stated, of an ability to convey. This, strictly speaking, is irresponsive matter, and it was his business to support the assertion by proof. None is shown, but on the contrary, it is established that other persons are in possession of the lots pretended to be sold by McMillan, who claim under titles derived from the proprietors. We think there is no distinction, in principle, between the case here, and that of Younge v. Harris, 2 Ala. Rep. 109; and therefore the decree is correct in directing a rescision of the contract between McMillan and Tiller.

4. The defence to the $750 note, rests upon the allegations of the bill, the admissions in the answers of the defendants Wellborn and Grimes, and the *pro confesso* against Gorman. The bill asserts that Gorman represented that McMillan had conveyed the title obtained from Tiller to Wellborn, Grimes, and himself. Wellborn, in effect, admits that such a representation was made, when he asserts that " the same title made by Tiller to McMillan, was conveyed by himself, Gorman and Grimes to Tiller." Grimes asserts that he, with the other defendants, took the lands from McMillan, as a dernier resort, to secure them against liabilities as sureties for him, and that they gave Tiller one-half of the lands, and sold him the other half. How there could be either a gift or a sale, without the assertion of title, is difficult to conceive, and certainly is not explained. It is not the proper course of evidence for any one to establish a negative, unless the affirmative is a presumption of law, and it was incumbent on these parties to show that McMillan had invested them with the title, the representation of which induced Tiller to give his note

as a compromise. There is no question as to the rule of law, that one may bind himself by the compromise of a doubtful or even bad claim. [Standifer v. Standifer, 1 Stewart, 532.] But a compromise induced by a false representation, is no more binding than a contract under similar circumstances.

5. The complainants do not pretend that a defence at law, would have been ineffectual, but they assign as an excuse for not making it there, that they were ignorant of the falsity of the representations which induced the giving of the note. The representations being admitted, and the means of proving their truth being entirely within the control of the defendants, it was incumbent on them to shew them to be true, or if otherwise, that the complainants were advised of their falsity previous to the rendition of judgment against them. The rule is, that chancery will not relieve against a judgment at law, unless the defendant was ignorant of the fact in question, pending the suit; or unless he was prevented from availing himself of the defence, by fraud or accident, or the act of the opposite party, unmixed with fault or negligence on his part. [Mock v. Cundiff, 6 Porter, 24; French v. Garner, 7 ib. 549.] Here, however, the giving of the note was induced by the representation of the party, which he does now attempt to support. Tiller acted upon this representation, and it is fair to presume a continuation of his confidence in its truth, until the contrary is shewn by the opposite party. This not being made apparent, the chancellor correctly visited the consequences of the representation upon those who made it.

6. It is supposed no decree ought to have been rendered against Gorman, as there is no proof on the part of this case, affecting him. Without examining into the question whether the admissions of the other persons, who are jointly parties to the judgment, as plaintiffs with Gorman, we place our answer to this objection on the ground, that he is concluded by the *pro confesso*. The regularity of the decree is not questioned by the errors assigned, and therefore it is unnecessary to examine whether the service was personal, or was perfected against him as a non-resident, by publication, neither of which matters appear in the transcript. In either event, however, if the service was perfected, the effect of the

*pro confesso* is the same. The act of 1841, [Clay's Digest, 254, § 58,] provides for the case when the service is personal; and the decision in Arnold v. Shepperd, [6 Ala. Rep. 299] shews that proof is unnecessary, of the allegations of the bill, when it is taken as confessed against an absent defendant properly before the court.

Our conclusion therefore is, that there is no error in the decree. Decree affirmed.