# Tindal *et. al v.* Drake *et al.*

*Bill in Equity for Partition of Lands, Account of Rents and Profits, &c.*

1    *Private legislative act, appointing trustee to execute trust created by deed, in which infants are beneficiaries.*—A private statute, appointing a trustee to execute a trust created by deed, in which infants are interested as beneficiaries, and authorizing him to settle with the acting trustee and to execute all the powers conferred by the deed on the original trustee (enacted at the instance of the acting trustee and most of the adult beneficiaries), is not an invasion of judicial power by the legislature, but a legitimate exercise of their own appropriate functions ; and its validity is not affected by the fact that, at the time of its enactment, the acting trustee had filed his accounts for settlement in the court by which he was appointed, and asked to be discharged, and proceedings under his petition were still pending.

APPEAL from the Chancery Court of Hale.

Heard before the Hon. A. W? DILLARD.

The original bill in this case was filed on the 26th April, 1871, by Pleasant M. Tindal (or Tindel) and others, children and grandchildren of Harvey Tindal and Sarah E., his wife, against William B. Drake and others ; and sought, principally, a partition of certain lands, which the complainants

claimed, and which were in the possession of said Drake, and an account of the rents and profits while in his possession. The several deeds under which the complainants claimed an interest in the lands, and which were made exhibits to their bill, are set out in the opinion of the court, and require no fuller description. The said W. B. Drake acquired possession of the lands, and claimed title to them, under a purchase and conveyance, made in February 1863, from Mrs. Sarah E. Tindal and James M. Tindal; the latter assuming to act as trustee for Mrs. Sarah E. Tindal and her children under the several deeds, and deriving his power to so act from a private act of the legislature, approved February 9, 1860, by which he was appointed trustee, and authorized to execute the trusts created by the said deeds. This act, which is copied in the opinion of the court, may be found in the Session Acts of 1859-60, p. 670. James May, the trustee named in the deeds, having died, Harvey Tindal was, in June, 1850, appointed trustee in his stead, by the Chancery Court of Greene County, in which county the lands were situated, and all the parties then resided; and said Harvey Tindal having died, Philip P. May was, in June 1854, appointed trustee in his stead by the same court. Philip P. May was made a defendant to the bill; which alleged, that he had never resigned, nor been removed from the trust; and prayed that, "if necessary," he might be removed, and a new trustee be appointed in his stead, because he refused to assert his legal rights as trustee.

There was a demurrer to the bill on various grounds, which was sustained by the chancellor; but his decree was reversed by this court on appeal, at its June term, 1874, and the cause was remanded.—See *Tindal v. Drake*, 51 Ala. 574–79. After the remandment of the cause, the bill was amended, bringing in several new parties, in accordance with the decision of this court; and a bill of revivor and supplement was also filed, bringing in the personal representative and heirs of W. B. Drake, who had died, as parties. An answer was filed by Drake's administrator, setting up the special act of the legislature appointing James M. Tindal as trustee, and the sale and conveyance by said trustee to Drake; alleging that the said act was passed at the instance of Philip P. May, the acting trustee, and of Mrs. Tindal and her adult children; and that the sale and conveyance to Drake was made in accordance with the requirements of the several trust deeds, and was valid. The validity of this act of the legislature, and the consequent validity of the sale and conveyance to Drake, were the main questions presented on the second hearing of the cause. On the part of the complainants, a

transcript from the records of the Chancercy Court of Greene was offered in evidence, showing the appointment of Philip P. May as trustee, and the proceedings had on his bill or petition for a settlement of his accounts and discharge from the trust. This transcript showed that said May's bill, or petition, asking a settlement of his accounts and discharge as trustee, was filed on the 2d September, 1857 ; that a decretal order was made at the June term, 1858, ordering the register to state the accounts of the trustee, and to report a suitable person to be appointed in his stead ; that at the ensuing February term, 1859, the register made his report, showing that, on the statement of the trustee's accounts, the trust estate was indebted to him in the sum of $33.60, but failed to recommend any one as a suitable person to be appointed in his stead ; that the reference as to the appointment of a new trustee was continued to the next term, and again to the next term, the chancellor refusing to recognize the appointment of James M. Tindal under the act of the legislature, and the register reporting that he was unable to find a suitable person who would accept the trust. These proceedings were had before Hon. JAMES B. CLARK, as chancellor, who delivered the following opinion : " The legislature having passed an act, appointing James M. Tindal as trustee for the defendants under the deeds mentioned in the bill, and directing the plaintiff to deliver over the property in his hands and account and settle with said James M. Tindal, and then be discharged and released from the trusteeship, I was disposed to acquiesce, and to allow this cause to be dropped from the docket, on the payment of the costs ; but, on reflection, I am satisfied that such course would be improper. Minors are concerned in the case, as *cestuis que trust*. The said James M. Tindal, whom the register has heretofore refused to recommend as a suitable trustee, is to take possession of this property, without giving any security for the protection of these minors, whom the law regards as under my protection. I consider the action of the legislature as wholly unauthorized, and I might say unprecedented. If this court has jurisdiction—of which, I presume, there can be no doubt—then the legislature had none ; and I shall therefore disregard their action. The cause must remain on the docket. " At the December term, 1860, he ordered the cause to be discontinued from the docket, at the costs of the trustee, and refused to discharge him from the trust.

On final hearing, on pleadings and proof, the chancellor held that the act of the legislature was valid, and that the title to the property passed to Drake by the sale and conveyance of James M. Tindal and Mrs. Sarah E. Tindal. He

[Tindal et al. v. Drake et al.]

therefore rendered a decree dismissing the bill, and his decree is now assigned as error.

JAS. E. WEBB, for the appellants.—The act of the legislature is a palpable usurpation of judicial power, which renders it void. Each department of the government is expressly forbidden, by the constitution, to exercise "any power *properly* belonging" to either of the others. The management, control, and settlement of trust estates, and the appointment and removal of trustees, properly belong and appertain to courts of equity.—Perry on Trusts, 271, §§ 293-4, citing *Wilson v. Towles*, 36 N. H. 129-38 ; 2 Daniell's Ch. 1446 ; 2 Story's Equity, §§ 976, 1059; Adams' Equity, 38-9; *Gaines v. Harvin*, 19 Ala. 491. The legal title to the lands was in P. P. May, as trustee, by the decree of the court appointing him ; and to divest that title out of him, and invest it in another, is a purely judicial act. While it will be found difficult to classify objectionable laws, says Mr. Sedgwick, "they will be found generally to range under three heads : 1st, when the legislature has, by a special act, sought to dispense with a general law, in favor of an individual ; 2d, where the act is one of legislation, for a particular case ; 3d, where the act is in its nature judicial."—Sedgwick's Const. Law, 167. This act is obnoxious to two of these rules : it is legislation for a particular case, and it is an attempt to exercise judicial power. An act granting a new trial, and an act granting a divorce, have been declared void, as being the exercise of judicial power. *Sanders v. Cabiness*, 43 Ala. 178 ; *Weaver v. Lapsley*, 43 Ala. 230 ; *Cram v. McGinnis*, 1 Gill & J. (Md.) 463 ; *State v. Fry*, 4 Mo. 120. Such power can not be both legislative and judicial, because, as Mr. Cooley says (pp. 90-91), "a wonted difference exists between the employment of judicial and legislative tribunals," and when an act or power is shown to be judicial, it necessarily results that it can not be legislative.—Dwarris on Statutes, 492 ; *Greenough v. Greenough*, 11 Penn. 494 ; 19 Illinois, 382 ; 5 Yerger, 320 ; Smith's Com. 513. In Tiffany and Bullard on Trusts, there is a statement, unsupported by authority, that a trustee may be appointed by an act of the legislature; but the statement seems to limit the principle to cases of necessity. In this case, there was no necessity, and even no vacancy in the office. The trustee derived his appointment from the court, and could only be discharged by the court. Proceedings were pending in the court, on his application, to obtain a settlement and discharge ; and while these proceedings were still pending and undetermined, the legislature attempts to interfere by a private act—to remove one trustee,

and appoint another; to create a vacancy, and fill it by legislative appointment.—*Pittman v. Adams*, 44 Mo. 585-9; *State v. Brice*, 7 Ohio, 414; 2 Conn. 532; *Kennedy v. Turnley*, 6 Irish Eq. 402; 1 Beavan, 473; 7 Vesey, 486; 7 Hare, 107; *Powers v. Bergen*, 6 N. Y. 358; *Garnett v. Leonard*, 47 Mo. 207.

A. BENNERS, THOS. J. SEAY, and A. A. COLEMAN, *contra.*— There is no allegation or pretense of fraud, in the sale and conveyance to Drake. The sale was considered judicious, proper, and necessary, when it was made; the consideration was reasonable, and the adult beneficiaries consented to and approved it. The case is narrowed down to the single question, whether the act of the legislature was valid, and authorized the sale; and this question can only be raised by the infant complainants, since the adults who procured the passage of the act of the legislature, or assisted in procuring it, can not be heard to question its constitutionality.—Sedgwick on Statutes, 88, and note; *Ferguson v. Landrum*, 5 Bush, Ky. In passing on the constitutionality of a statute, the courts require that its nullity and invalidity shall be clearly shown, and the particular provision pointed out which is supposed to be violated.—Cases cited in 20 U. S. Digest, p. 188. It must be remembered, too, that the law-making power of the legislature is supreme within its sphere, subject only to the limitations imposed by the constitution; and the court must look, not to what the constitution authorizes, but to what it prohibits.—*Philadelphia v. Field*, 58 Penn. 320; 13 Cal. 159; 6 Clark, Iowa, 391. The specific objection to this statute is, that it is an attempt by the legislature to exercise and usurp judicial powers; and the argument is, that since the courts may with propriety appoint and remove trustees, therefore the legislature can not. But this conclusion is a *non sequitur*. There are many powers which may properly—that is, with propriety—be exercised by the legislature, or given by statute to the courts; as in establishing rules of practice, or rules of proceeding. The word "properly," as used in the constitutional prohibition, must be construed to mean strictly, or exclusively, not merely appropriately: that no one department of the government shall exercise any power strictly (or exclusively) belonging to either of the others. The appointment of a trustee is not strictly a judicial act: it does not involve the idea of a trial, the ascertainment of contested liabilities, the passing of a sentence or judgment, or deciding upon a law already enacted. This question had been decided by this court, in the case of *Gaines v. Harvin*, 19 Ala. 499, before the appointment of the trustee in this case was made; the decision being expressly based on the

[Tindal et al. v. Drake et al.]

ground that the appointment of a trustee, though *quasi-judicial*, is not a strictly judicial act. The power of the legislature to appoint trustees is fully vindicated, on principle and authority, in the following text-books and adjudged cases: Tiffany & Bullard on Trustees, 350, 473; Cooley's Const. Lim. 97–106; *Hindman v. Piper*, 50 Mo. 293; *Rice v. Parkman*, 16 Mass. 326; *Cochran v. Van Surlay*, 20 Wend. 373; *Thurston v. Thurston*, 6 R. I. 296; *Williamson v. Williamson*, 3 S. & M. 715; *McComb v. Gilkey*, 29 Miss. 146; *Boon v. Powers*, 30 Miss. 246; *Estep v. Hutchman*, 14 S. & R. 435; *Carroll v. Olmsted*, 16 Ohio, 251; *Stanley v. Colt*, 5 Wall. 119. The same principle is recognized in the decisions which sustain the validity of private statutes authorizing sales of property belonging to infants, estates of deceased persons, &c.— *Holman's Heirs v. Bank of Norfolk*, 12 Ala. 369; *Chappell v. Williamson*, 49 Ala. 153; *Todd v. Spence*, at the last term; *Watkins v. Holman*, 16 Peters, 25.

STONE, J.—Pleasant May, sr., by two deeds, bearing date severally, November 3, 1836, and July 17, 1841, conveyed real and personal property to James May, "in trust for Sarah Tindal, the wife of Harvey Tindal, and the heirs of her body, excepting the girl Mary, which is in trust for Jane Tindal, the daughter of Harvey and Sarah Tindal. The above land is to be held, and the above negroes to be held, kept together by the said James May, for the support and maintenance of the said Sarah Tindal, and any children that she now has, or that she may hereafter have during the natural life of the said Sarah Tindal; then it is to be equally divided between the children of the said Sarah Tindal, with the exception of the negro girl Mary. But the said James May is hereby authorized and empowered, should he think proper, by obtaining the consent of the said Sarah Tindal, to dispose of all or any part of the above mentioned land or negroes, for the benefit of the said Sarah Tindal and her children; or, should he think proper to give off, to any of the children of the said Sarah Tindal, his or her share, he is hereby authorized and empowered so to do, by and with the advice and consent of the said Sarah Tindal first had and obtained." The above is extracted from the first of the deeds, and conveys lands and slaves. The second is in substance the same, and conveys lands only. Each was upon a good, not a valuable consideration. James May, the trustee, died; and in June, 1850, Harvey Tindal, husband of said Sarah, was appointed trustee in his stead, by the Chancery Court of Greene county. During the year 1853, the said

Harvey Tindal died, and Philip P. May was appointed trustee in his stead, by the Chancery Court aforesaid.

With the products or profits of the property conveyed by said deeds of Pleasant May, the lands here in controversy were purchased and paid for. Four of the tracts were conveyed to Harvey Tindal, in trust for his wife, Sarah Tindal, and her children. A fifth deed was made to Philip P. May, after his appointment as trustee; and all the deeds expressed that the conveyances were in trust for Sarah Tindal and her children. Some of them contain a power of sale, similar to that contained in the deeds of Pleasant May, while others omit it. We regard, however, all the lands as springing out of the trusts created by the two deeds of Pleasant May, and charged with the trusts, and impressed with the powers therein expressed. Philip P. May tendered his resignation as trustee to the Chancery Court; and under its order, he settled his accounts, and showed that nothing was due from him as trustee. The account was allowed and passed, but the chancellor refused to discharge him, and dismissed his petition therefor, because the register was unable to procure another trustee who would accept the trust and give the bond required by the chancellor.

In this stage of the proceeding, and before the chancellor had finally acted on Philip May's petition for discharge, the act "for the relief of Sarah Tindal and other persons therein named," was passed; see Pamph. Acts, 1859-60, p. 670. Its language is: "That James M. Tindal be, and he is hereby, declared and appointed trustee for Sarah Tindal and her children, under and by virtue of certain deeds in trust made for their benefit and support by Pleasant May, sr., late of Greene county, with full power and authority to take possession of, control, and manage the said trust estate, in the same and as ample a manner as the trustee named in said trust would or could do if he were living." Section 2: "That the said Philip P. May be, and he is hereby, authorized and required to account with the said James M. Tindal, for all the money, property, and effects belonging to said trust estate, which have come into his hands or possession as such trustee; and on his fully accounting for such money, property and effects, and delivering the same to the said James M. Tindal, the said Philip P. May shall be fully discharged and released from his said trusteeship." Approved, February 9, 1860.

Under this act, Sarah Tindal and James M. Tindal, the latter executing as trustee, on February 21, 1863, by deed of bargain and sale, reciting the said trust of Pleasant May, and the desire of said Sarah Tindal, and consent in writing,

that said lands be sold to William B. Drake, sold and conveyed said lands to said Drake, in consideration of seven thousand one hundred and sixty-six 67-100 dollars, in hand paid; and put said Drake in possession. When said act was passed, and when said conveyance was made to Drake, there were one child and grand-children living, who were minors, and tenants in vested remainder of undivided interests in said lands. The testimony shows, we think, that Mrs. Tindal and her adult children, or the most of them, desired the enactment of the statute, and desired the sale should be made. The main question presented by this record is, did the act recited above authorize James M. Tindal to sell and convey the lands, and was the title devested out of the Tindal heirs by the sale and conveyance? Had the legislature power to appoint James M. Tindal trustee under the deeds? It is contended for appellant, that the appointment of a trustee is in its nature judicial, and the constitution denies to the legislature the exercise of judicial functions.

We think we may lay it down as a rule, that judicial action is the application to persons or things of legal sequences from facts agreed, or judicially ascertained. It implies parties, an issue of law or fact, one or both, and judgment pronounced, affecting rights of person or of property. Sometimes, the public is one of the contesting parties; as the commonwealth, when it charges some crime, or *quasi* criminal offense; or the people in their collective capacity, as in proceedings strictly *in rem*. Still, there must be an issue, express or implied, or judgment rendered, which declares or qualifies some right affecting life, liberty, or property. Less than this is not a judicial function; is not judgment.

The three departments into which the powers of constitutional government are divided—legislative, executive, and judicial—are not so distinctly separated and marked, as that it is always easy to determine under which head any and every given power will fall. Legislative and executive functions frequently depend on the ascertainment of facts, or conclusions of fact, and the drawing of inferences or conclusions therefrom. There is scarcely an act, public or private, which does not, to some extent, call the judgment into exercise. On the other hand, judicial powers are largely dependent for their efficiency—their vital existence—on the exercise of powers purely executive or ministerial. Judges of courts, and the courts themselves, are often clothed with official powers which are ministerial, not judicial.

Speaking of the power of the legislature to direct the sale of an infant's land, for reinvestment in other property, deemed more advantageous to the infant, the Supreme Court

of Massachusetts, in *Rice v. Parkman,* 16 Mass. 326, said: "But it does not follow that, because the power has been delegated by the legislature to courts of law, it is judicial in its character. For aught we see, the same authority might have been given to the selectmen of each town, or to the clerks or registers of the counties : it being a mere ministerial act, certainly requiring discretion, and sometimes knowledge of law for its due exercise ; but still partaking, in no degree, of the characteristics of judicial power." And so, the power of the legislature to grant the order was maintained. So, in *Cochran v. Van Surlay,* 20 Wend. 365, it was ruled—Chancellor Walworth delivering the opinion in the Court of Errors—that "a private act of the legislature, authorizing a sale of the estate of infants, for their maintenance and education, is within the scope of the legitimate authority of a State legislature." So, in *Williamson v. Williamson,* 3 Sm. & Mar. 715, the High Court of Errors and Appeals of Mississippi decided, that "when a sale is made by virtue of a private act of the legislature, authorizing the sale of an intestate's estate, the titles acquired under it, if the proceedings are regular, are valid." This subject is fully discussed by Judge Cooley, in his work on Constitutional Limitations, marg. page 98 ; and he states, as the rule deducible from the authorities, "If the party standing in the position of trustee applies for permission to convert by a sale the real property into personal, in order to effectuate the purposes of the trust, and to accomplish objects in the interest of the *cestui que trust* not otherwise attainable, there is nothing in the granting of permission which is in its nature judicial."—See Cooley's Const. Lim., marg. pages 97 to 105, and notes.

This question has been frequently before this court, and has been uniformly decided in favor of the power.—See *Holman v. Bank of Norfolk,* 12 Ala. 369 ; *Chappell v. Williamson,* 49 Ala. 153 ; *Todd v. Spence,* 56 Ala. 99. See, also, *Watkins v. Holman,* 16 Pet. 25 ; *Stanley v. Colt,* 5 Wall. 117 ; *Chandler v. Douglass,* 8 Blackf. 10 ; *Brevoort v. Grace,* 53 N. Y. 245.

Nor can we think that, on principle or authority, the appointment of a trustee to execute the powers of a trust deed, in which infants are beneficiaries, is any more an exercise of judicial power, than is the granting of an authority to sell land. Neither of these powers operates a transfer of the beneficial interest in property, from one person to another. Under our statute, the registers in chancery have the power to appoint trustees of express trusts, created by deed or will. Code of 1876, § 3732. In *Holman v. Bank of Norfolk, supra,* the statute not only authorized a sale of lands lying in this

State, but appointed the person, a resident of Mass achusetts to make the sale ; a sale was made, and this court decided that the title passed by the sale. In *Watkins v. Holman*, 16 Pet. 25, the same statute received the same construction in the Supreme Court of the United States. In *Howard v. Thornton*, 50 Mo. 291, the court declared, that " the general power of the legislature to appoint trustees to execute trusts cannot be questioned." In *Carroll v. Olmstead*, 16 Ohio, 251, a special statute had been enacted, authorizing a sale of lands for partition, and appointing three named commissioners to make the sale ; they did sell and convey, and it was ruled that the title passed by the sale thus made. In *Williamson v. Suydam*, 6 Wall. 723, it was ruled, that "a statute authorizing the chancellor of the State to discharge trustees named in a will (the purpose of the trust being to hold real estate, and to pay the rents to persons named for life, and on his death to dispose of the fee to his children), and to appoint new trustees in their place, is valid; it appearing that the act was passed with the knowledge, and at the request of the original trustees." In *Careg v. Giles*, 9 Geo. 253, the legislature had appointed a receiver to take charge of and disburse the assets of an insolvent bank; it was held that this was not judicial action, and that the appointment was valid.—See, also, *McComb v. Gilkey*, 29 Miss. 146; *Lathrop v. Stedman*, 42 Conn. 583, 591, to same effect as *Howard v. Thornton, supra; Stewart v. Griffith*, 33 Mo. 13; *Garnett v. Leonard*, 47 Mo. 205.

The decision of this court in *Gaines v. Harvin*, 19 Ala. 491, can not be maintained on any other ground, than that the appointment of a trustee is ministerial, not a judicial function. If judicial, the register could not have been empowered by the legislature to make it, according to the theory and argument of that opinion.

Philip P. May had tendered his resignation, and desired to be relieved of the trust. He also recommended the appointment of James M. Tindal, as his successor. These facts bring this case directly within the influence of *Williamson v. Suydam*, 6 Wall. 723. We hold, that the legislature did not transcend its power in the appointment of James M. Tindal as trustee, and that he succeeded to all the powers conferred on James May, by the two deeds of Pleasant May. On this question, we fully concur with the chancellor in his excellent opinion and argument.

The original bill, " Exhibit 4," shows that an undivided half-interest in the " Candie's landing " property, containing about one hundred acres, was conveyed by John May and wife to Harvey Tindal, to be held by him as trustee of his

[Tindal et al. v. Drake et al.]

wife and children, under the trusts expressed in the deeds from P. H. May. The amended bill charges, that there was subsequently purchased, and paid for with the trust funds aforesaid, a one-third interest in the same "Candie's landing" property, under the following circumstances : The bill charges that the said one-third interest, while Philip P. May was acting as trustee, was decreed to be sold by order of the Probate Court, and was sold as the property of the estate of John May, deceased, by Sydenham Moore, his administrator ; and that, at said sale, Patrick May purchased said one-third interest, for the benefit of said trust estate, and that it was paid for with money belonging to said trust fund ; but that the title to said one-third was, by mistake, conveyed directly to said Sarah E. Tindal. The bill seeks to have this undivided third of the property, known as " Candie's landing," set apart to the tenants in remainder, Mrs. Tindal having died before the bill was filed. We do not find this deed in the record. The answer admits this averment, with the single exception, that it denies that this interest was paid for with trust money, "but alleges that they were bought by said Patrick May, for Sarah E. Tindal herself, and said one-third became and was her property." The only testimony on this question is that of the witness Dunlap, who proves that this interest was paid for with the profits of the trust property. We regard this proof as sufficient to establish this averment of the amended bill, and shall treat this undivided third interest of the " Candie's landing" property as belonging to the trust estate. The deed of James M. and Sarah E. Tindal to William B. Drake, " Exhibit 6 " to the original bill, conveyed only a half interest in the property known as " Candie's landing," and thus left this one-third interest in the trust estate. The complainants are entitled to this one-third interest, and to an account of rents and profits, subject to a rebate for improvements made, and taxes paid. In the present state of the record, we are somewhat embarrassed in giving proper directions for the partition of the property, and for the taking of the account ; and we will remand the cause to the Chancery Court, that the proper orders may be there made.

Reversed and remanded, to be disposed of according to the principles of this opinion. Let the costs of the appeal be paid, in equal moieties, by the adult appellants and the adult appellees.