# Masterson *v.* Pullen.

*Bill in Equity to enforce Vendor's Lien.*

62   145
131   216

1. *Administration of decedent's estate; what court has jurisdiction over.*—Under the general statutes, only the probate court of the county in which the decedent had his last residence, has jurisdiction to grant an administration of his estate, no matter in what part of the State his property may be; but this results from statute and may be changed by statute applicable to a particular estate.

2. *Objection to bill; where must be first made.*—The objection can not be urged here for the first time, that a bill is too general in its allegation of facts requisite to authorize the removal of an administration, pursuant to an act of the legislature, when the defects in that respect could have been remedied by amendment, in the court below, if a demurrer had been there interposed, specially setting forth the ground of objection.

[Masterson v. Pullen.]

3. *Evidence; where objections to, must be primarily made.*—Objections can not be raised here to evidence, on the ground that it was secondary, without proper predicate for its admission, when no objection was raised on that ground in the court below.

4. *Vendor's lien; what will not defeat.*—The legal title to land sold by the vendor, who took notes and gave bond to convey title upon full payment, passes on his death to his heirs, but they hold it only in trust for the vendee, if he has paid the purchase money, or if not, that the vendor's lien may be made available against it; and they can not convey it to any one having actual or constructive notice of the executory agreement of sale, so as to cut off the vendee's equity or that of the vendor's administrator to a specific performance; and the notes for the purchase-money pass to the personal representative, and not to the heirs, who holds them in trust primarily for creditors, and next for the distributees of the estate. In equity such a transaction is an equitable conversion of the land into personal property, and intercepts the descent to the heir.

5. *Estoppel; what acts of former administrator do not estop succeeding ones.*—An administrator, by his acts or agreements with sub-purchasers from the original vendee, may estop himself from asserting a vendor's lien on the lands in their hands; but this estoppel will not bind a succeeding administrator, who may, if the purchase money is necessary for the payment of debts, enforce the lien for the benefit of the estate.

6. *Bona fide purchaser; who is not.*—A vendee, who neither avers nor proves that he has paid the purchase-money in full or in part, is not entitled to protection as a *bona fide* purchaser.

APPEAL from Lawrence Chancery Court.
Heard before Hon. WILLIAM SKINNER.
The opinion states the case.

WATTS & SONS, THOMAS M. PETERS, and H. C. SPEAKE, for appellants.—The legislature has the undoubted right to transfer the administration of an estate from the county of the decedent's residence.—*Tindal v. Drake*, 60 Ala. 170, and authorities cited. If the bill is defective in averment, such defect should have been pointed out by demurrer in the court below, specifying the precise ground of objection. The defect here insisted on, as to the failure to aver that the consent of the sureties was filed in each of the probate courts of Winston and Lawrence counties, could have been remedied by amendment, and not being raised on demurrer in the lower court, furnishes no ground of reversal here.—10 Ala. 305. It was shown that the records of each of these counties had been destroyed by fire, and, beside, no objection was made to the testimony in the court below, and they can not be first raised in this court.—1 Brick. 848. The land of Thomas Greene descended to his heirs, but they held as trustees for the creditors until the debts were paid, and the administrator of his estate had a paramount right to the heirs for the purpose of paying the debts.—*Patton v. Crow*, 26 Ala. 426. The heirs could make no contract which could defeat this paramount right, and purchasers from them can have no better right than they had, and the lands in their

hands is subject to the payment of the debts of Thomas Greene. Thaxton never had any legal title, and Burdett & Motheral did not acquire any title by their transactions with him. Their answer shows that they were fully informed as to all the facts, and none of the sub-purchasers are shown to be *bona fide* purchasers without notice and for value. As to these lands, the whole case may be thus summed up : Thomas Greene owned the lands, and owed debts whose payment the law charged on the land. He died with the legal title in him, and the debts unpaid. The lands descended to his heirs subject to the payment of these debts, and no purchaser with notice from the heirs can resist the representative of the estate when he seeks to subject them to the payment of his intestate's debts. The administrator *de bonis non* is not bound by any agreement of the administrator in chief, and no act of the latter can affect the rights or duties of the former.

R. O. PICKETT and WILLIAM COOPER, *contra.*—The bill fails to aver the prerequisites of a valid transfer under the act of February 8, 1861. It charges, by way of recital only, that George S. Greene complied by giving bond to administer the estate in Lawrence county, and it utterly fails to aver that the sureties of the administrator in chief ever assented to any such transfer, and their assent was to be filed in writing in the probate court of each county before the jurisdiction of the probate court of Lawrence county ever attached, and if this was not done, the action of that court is *coram non judice* and void, and the appointment of the complainant as administrator *de bonis non* is a nullity.—See 40 Ala. 155, and cases cited. When the original notes of Thaxton was given up by Greene, the administrator, the vendor's lien was gone. The notes were paid by the notes then given to Thaxton, and Burdett & Motheral obtained a title by the conveyance of the heirs and administrator, which was discharged of the vendor's lien. The right to enforce the lien then resided in George Greene, and upon his surrender of the notes for the purchase-money, it was gone forever.—10 Pick. 215 ; 2 Cow. 807 ; 9 John. 244 ; 5 Yerger, 109 ; 11 Mass. 259 ; 12 Mass. 210.

STONE, J.—Under the general statute, when a resident of this State dies, no matter in what part of the State his property may be, only the court of probate of the county in which he had his last residence has jurisdiction to grant administration of his estate.—Code of 1876, § 2349. This, however, is the result of statute, and may be changed by

statute, either general in its provisions or made applicable to particular estates.— *Tindal v. Drake*, 60 Ala. 170, and authorities cited. Thomas Greene died intestate, a resident of Winston county, and the court of probate of that county appointed George T. Greene, son of intestate, administrator of his estate, who gave bond and qualified as such in that court. Soon afterwards—in about two months—the act of the legislature was approved, by which it was declared, "That from and after the passage of this act, the administration of the estate of Thomas Greene, deceased, be, and the same is hereby removed from Winston to Lawrence county in this State. That the court of probate for the said county shall take jurisdiction of the said administration, and that the administrator of said estate shall be required to give bond, and account and make settlement with the said court of probate, as required by law in other cases : *Provided*, that the sureties of the said administrator shall first file their assent in writing to the provisions of this act, in the probate court of Winston and Lawrence county."—Pamph. Acts, called session, January 1861, p. 74. The complainant in the present suit—administrator *de bonis non* of Thomas Greene, deceased—was appointed such administrator by the judge of probate of Lawrence county. It is contended for appellees, that the decree of the Chancellor, dismissing complainant's bill, should be affirmed, because the bill fails to show the judge of probate of Lawrence county had jurisdiction to appoint an administrator on said estate. The record contains no evidence that this question was presented or considered in the court below. The precise objection is, that the bill fails to aver that the sureties of the administrator filed, in the probate courts of Winston and Lawrence counties, their assent in writing to the provisions of the act copied above. We do not think the bill is obnoxious to the criticism, that the portion we are considering is mere recital, and not an averment that its statements are true. We think it complies fully with the statute in that regard.—Code of 1876, § 3761. The language of the bill is, "Complainant further showeth, that afterwards, viz : on or about the 8th day of February, 1861, said administration of said estate was removed by act of the General Assembly of the State of Alabama from said county of Winston to the county of Lawrence in this State ; said act is entitled," &c., " and was approved the 8th day of February, 1861, and will be found in pamphlet acts of called session 1861, at page 74—No. 90—to which this court is respectfully referred, and which complainant asks to be allowed to produce on the hearing of the bill, if necessary. And complainant further showeth, that said

[Masterson v. Pullen.]

George T. Greene, as administrator as aforesaid, upon the removal of said administration of said estate to said county of Lawrence, as allowed by said law, complied strictly with all the provisions and requirements thereof, and undertook the administration of said estate in said county of Lawrence," &c. The objection urged to this averment is, that it does not, in terms, state that the sureties of the administrator filed their assent in writing to the provisions of said act, in the probate courts of Winston and Lawrence counties. All the defendants answered the bill in this cause, and none of them assigned this objection, as ground of demurrer to the bill. If this question had been raised by demurrer, and the demurrer had been sustained, the complainant would have had to amend his bill, and could have made the averment more specific. Our statute (Code of 1876, § 3784,) requires a demurrer to a bill to set forth the ground of demurrer specially, and declares that otherwise it must not be heard. The objection we are considering is not that the bill omits this important averment—important to give the probate court of Lawrence jurisdiction of the administration—but that the averment is, in form, too general. This, we hold, could only be reached by demurrer, specifying the ground; and if well taken, an amendment, curing the imperfection, would have been allowed.— *Wellborn v. Tiller,* 10 Ala. 305 The objection to this averment, if, indeed, the averment is defective, being amendable in the court below, furnishes no ground for affirming the decree of the chancellor, if the complainant is otherwise entitled to relief.

A second reason urged why the decree of the chancellor should be affirmed is, that inasmuch as the assent of the sureties of the administrator to the removal of the administration from Winston to Lawrence county was required to be in writing, and filed in each of the probate courts of Winston and Lawrence, the record contains nothing which we can consider evidence of this material fact. The oral testimony of witnesses, unrebutted as it is, is sufficient to raise the presumption that such written assent was filed in said courts; but the objection is, that this is a record fact, which can be proved only by the record; and if the record has been lost or destroyed, then the record should have been first re-established according to the statute, and a certified copy of such re-established record produced in evidence. We think the proof in this record establishes the fact that the records of both Winston and Lawrence counties were destroyed between the time of the removal of the administration and the taking of the testimony in this cause. There was no objection, however, in the court below, to this or any other

part of the testimony offered. This was a waiver of all objection to its legality.—1 Brick. Dig. 848, § 635. But we are not prepared to admit the testimony was illegal.—1 Greenl. Ev. § 509.

Under our statutes, lands as well as personal property of a decedent are charged with the payment of the debts of the estate. And when a sale of lands becomes necessary for the payment of debts, the assertion, by the personal representative, of his right to bring the lands of his testator or intestate into administration, intercepts the descent to the heir; and, to this end, the personal representative may maintain ejectment for the recovery of possession of lands owned by decedent at the time of his death, even against the heir himself. The legal title, it is true, is cast on the heir; but in such case, he holds it only in trust for the benefit of creditors, whose claims are paramount. The executor or administrator, that he may hold the lands in readiness to meet debts, either by leasing or selling the same, should it become necessary, has a right to the possession, which will prevail over the legal title descended to the heir; and hence he may maintain ejectment against the heir, or any intruder into the possession.—1 Brick. Dig. 625, § 6; *McCullough v. Wise*, 57 Ala. 623. Of course, we do not gainsay the widow's quarantine rights. Such is the law, where decedent dies the owner of lands, and has made no agreement for the sale thereof.

In the present case, Greene, the intestate, made an executory agreement, in his life time, with Thaxton, by which he agreed to sell the lands in controversy at the agreed price of eight thousand dollars. Thaxton gave his notes for the purchase money, and Greene executed to him a bond to make him title, and put him in possession. When Greene died, no part of the purchase money had been paid, and no title had been made to Thaxton. Thus the title remained, with only seven hundred dollars of the purchase money paid, when Burdett and Motheral commenced negotiations with Thaxton for the purchase of the lands. The record informs us that they, Burdett and Motheral, had full knowledge of the condition of the title. In fact, they do not, in their answers, deny such knowledge, but impliedly admit it. They state in their answers, "that when the said Thomas Greene sold the said tract of land to said Thaxton, he made him no deed, but executed a bond for titles, of which these defendants were informed by said Thaxton, before they purchased said lands from him. But they do not know that the said Thomas Greene, at the time of his sale of said lands to said Thaxton, retained his vendor's lien on said land for the payment of the purchase money, other than the fact that Thaxton had

[Masterson v. Pullen.]

·no deed from Greene, but only his bond for title; of this, as before stated, they had notice." The title bond showed that ·the purchase was on credit, and bound Greene to make title only when the purchase money was paid. In bar of plaintiff's right of recovery, these defendants set up the following averred facts: "That before they purchased said tract of land from said Thaxton as aforesaid, he, said Thaxton, agreed and stipulated with these defendants, that all liens, incumbrances and defects of titles on and to said tract of land should be removed, if any existed; and that in pursuance of this agreement, * * said Thaxton complied with his agreement, and did remove all liens and incumbrances on said lands, and especially the lien of Thomas Greene, deceased, which the administrator now seeks to enforce by this suit as the vendor's lien for the purchase money of said lands." After averring that Thaxton made partial payments to the administrator, which were entered as credits on the unpaid purchase money, the answer proceeds: "For the balance of the purchase money due on said lands, the said George Greene, administrator as aforesaid," (the administrator in chief of Thomas Greene's estate,) "received of the said Thaxton his notes, with the full understanding and agreement that this arrangement was to waive and abandon all liens on said lands for the purchase money; and then and there the said George Greene, administrator, delivered up to the said Thaxton his original notes for the purchase money of said lands, and the same were canceled and effaced. And these defendants charge and allege that they would not have purchased, and did not purchase said lands, until the vendor's lien for the purchase money was removed and waived as above set forth, and the same was sanctioned by the said George Greene as the administrator of the estate of Thomas Greene, deceased,—who afterwards, to-wit: on the 12th day of October, 1863, executed a deed in due form conveying to them, in consideration of the sum of eighteen thousand five hundred dollars, the said tract of land, together with the widow of said Thomas Greene, deceased, and his other heirs at law, save one." The deed is made an exhibit, and contains the names of the widow, and all the heirs save one, a married woman. Another heir executing the deed, Mrs. Flanagan, signs her name alone, without the concurring signature of her husband. Taking these averments to be true in all they import, we think they amount to an admission of the following state of facts, and of Burdett and Motheral's knowledge that such were the facts, namely: That Thomas Greene, in his life time, made an executory agreement with Thaxton to sell him the lands in controversy, and to make him title

when the purchase money was paid; that when Thomas Greene died no part of the purchase money had been paid, and no title made; that when Thaxton made the arrangement with the administrator, widow and four of the five heirs, by which he obtained their deed of conveyance to Burdett and Motheral, he did not pay the purchase money, but took up the unpaid purchase money notes, by giving others in their stead. We repeat, the answer does not allow us to doubt that Burdett and Motheral knew these several matters before they concluded their purchase from Thaxton. These are the averred grounds on which these defendants claim that there is no vendor's lien in this case, as against them. The defendants, in the court below, offered no testimony, except their sworn answers and their deed referred to above. The main features of this defense rest on affirmative averments, not responsive to any allegations in the bill. None of it is proved, except the making of the deed by the widow and part of the heirs; and as to those who signed the deed, there is proof tending to show that some of them, at least, affixed their names to it without knowing its contents. But we do not rest our opinion on this ground.

Before the death of Thomas Greene, as we have shown, he had contracted to sell the lands to Thaxton, received his notes for the purchase money, given him a bond to make him title, and put him in possession. This did not change the legal title to the land, but left it in Thomas Greene; and when he died, the title descended to his heirs. It was, however, an equitable conversion of the land into personal property; and, in equity, the descent of the land to the heir was intercepted thereby. Speaking of such contracts, and the rights growing out of them, Story, in his work on equity jurisprudence, vol. 1, § 790, says: "In the view of courts of law, contracts respecting lands, or other things of which a specific execution will be decreed in equity, are considered as simple executory agreements, and as not attaching to the property in any manner, as an incident, or as a present or future charge. But courts of equity regard them in a very different light. They treat them, for most purposes, precisely as if they had been specifically executed. Thus, if a man has entered into a valid contract for the purchase of land, he is treated in equity as the equitable owner of the land, and the vendor is treated as the owner of the money. The purchaser may devise it as land, even before the conveyance is made, and it passes by descent to his heir as land. The vendor is deemed in equity to stand seized of it for the benefit of the purchaser; and the trust attaches to the land, so as to bind the heir of the vendor, and every one claiming

under him as a purchaser, with notice of the trust. The heir of the purchaser may come into equity and insist upon a specific performance of the contract ; and, unless some other circumstance affect the case, he may require the purchase money to be paid out of the personal estate of the purchaser, in the hands of his personal representative. On the other hand, the vendor may come into equity for a specific performance of the contract on the other side, and to have the money paid ; for the remedy, in cases of specific performance, is mutual, and the purchase money is treated as the personal estate of the vendor, and goes as such to his personal representatives. In like manner, land, articled or devised to be sold and turned into money, is reputed as money." This principle, which is unquestionably correct, precisely meets the wants of complainant's case. The notes given by Thaxton to secure the purchase money, were personal assets, and passed to the personal representative, not to the heirs. The legal title to the land descended to the heirs, but they held it only in trust for Thaxton, the purchaser, if he paid the purchase money ; and if he did not, then in trust that the vendor's lien might be made available against it. They could not convey it to any one having actual or constructive notice of the executory agreement of sale, and thus cut off either Thaxton's or the administrator's equity for a specific performance.—2 Brick. Dig. 519, § 181.

It is claimed for appellees, that inasmuch as the administrator himself surrendered the purchase money notes, and united in the deed of conveyance, this devested the right of the estate to pursue the lands in the hands of the vendees from Thaxton. The administrator, however, held the notes in trust, for the creditors of the estate primarily, and next for the distributees of the estate. He may have estopped himself from afterwards enforcing the payment of the surrendered notes, by the conveyance he made.—*Hopper v. Steele*, 18 Ala. 828, and authorities cited. The estate, however, owed large debts, and, without this claim, has not assets for their payment. The administrator *de bonis non* is not affected by this estoppel, but may enforce the lien for the benefit of the estate.

Pullen, the sub-purchaser from Burdett and Motheral, does not show himself a *bona fide* purchaser. He neither proves nor avers that he has paid the purchase money, or any part thereof.—2 Brick. Dig. 518, §§ 171–2.

The decree of the Chancellor is reversed, and this court, proceeding to render the decree the Chancellor should have rendered, doth order and decree that the complainant is entitled to the relief he seeks. It is referred to the register to

[McAdory v. The State.]

take and state an account of the amount due and unpaid of the purchase money, including interest; and he will report to the Chancery Court. All other questions are left open for decision and decree by the Chancery Court.

Reversed and rendered.

BRICKELL, C. J., not sitting.