## WILLIAMSON *v.* SUYDAM.

1. A statute authorizing the chancellor of the State to discharge trustees named in a will (the purpose of the trust being to hold real estate and to pay the rents to a person named for life, and on his death to dispose of the fee to his children), and to appoint new trustees in their place, is valid; it appearing that the act was passed with the knowledge and at the request of the original trustees.

2. The trustees having been discharged pursuant to the statute, it was competent for the legislature, by a supplemental act, to grant power to the chancellor to appoint, as such trustee, in the place of those discharged, the devisee of the life estate, and authorize him to execute the trust. Such discharge and substitution did not violate the obligation of a contract.

3. The first statute having authorized trustees to be appointed by the chancellor to divide, as soon "as conveniently may be," certain real estate which they held in trust for A. for life, remainder to his children, one moiety whereof—the statute said—shall be held by them to those uses, and the remaining moiety shall be subdivided by them into so many lots as they think most likely to effect an advantageous sale, the proceeds to be invested and the interest to be paid to tenant for life: *held*, —(the chancellor *having made* an order that the *eastern* moiety of the

estate should be sold, and a third act of assembly having authorized the trustee, under the order theretofore granted, or any subsequent order, either to mortgage or sell the premises which "the chancellor *has* permitted or *may* permit him to sell ")—that the power to partition the estate was not exhausted by the first partition into an eastern and western portion, and that the chancellor might permit the substituted trustee to sell the southern moiety instead of the eastern.

4. This would be so as an original question: one, however, already settled by this court in the case on former judgment. In addition, it would be to be taken to be so at all events, the question arising in this case on a statute which has been construed in that way by the highest court of the State which passed it.

ERROR in ejectment to the Circuit Court for the Southern District of New York.

The case was thus:

Mary Clarke, who died in 1802, devised certain land, now town lots in New York City, to the Right Rev. Benjamin Moore, his wife (the daughter of Mrs. Clarke), and a third person, Mrs. Maunsell, in trust, to receive the rents, to pay the same to her grandson, Thomas B. Clarke (a man, apparently, of improvident habits) during life, and upon his death to convey it to his issue, then living, in fee; and leaving none, then to Clement C. Moore, in fee.

In May, 1811, Bishop Moore had become enfeebled in health. His son, on his father's behalf, in that month, addressed a communication to the Diocesan Convention of the State of New York, requesting it to appoint an assistant bishop for that diocese; wherein he stated, "that though the disease with which it had pleased Almighty God to visit him, was somewhat mitigated, yet, that it was impossible, he was assured, that he should ever be able to render or perform the duties of the episcopal functions." Thereupon the convention appointed an assistant. In July following, the bishop was struck by paralysis, and grew weaker until he died, in February, 1816.

In 1814, the legislature of New York, on the application of Mr. Clarke,—who had at this time two children, a third afterwards born not having as yet come into being,—passed an act, in which—reciting that the trustees had agreed by

writing to all such acts as the legislature should deem proper to make for the benefit and relief of T. B. Clarke, and did desire that some other persons might be appointed trustees—it was provided, that the Court of Chancery, on his application, might " appoint one or more trustees to execute and perform the several trusts and duties" specified in the will, in place of the testamentary trustees, "*who are hereby discharged from the trusts in the said will mentioned:*" and, further, that the new trustees should, " as soon as conveniently may be, partition and *divide*" the land " *into two equal parts, one moiety whereof shall be held by them to the uses and upon the trusts declared in and by the said will,* and the remaining moiety shall be subdivided by the said trustees into so many lots as they may think most likely to effect an advantageous sale thereof; and after having completed such subdivision, the said trustees are hereby authorized and required, *within a convenient time thereafter, not to exceed six months,* except at the request of the said Clarke, to sell and dispose of the said last subdivided moiety," the proceeds to be invested, the interest, excepting a certain portion, to be paid to Mr. Clarke, and the principal reserved for the trusts of the will.

In 1815, on the application of Mr. Clarke, a supplemental act was passed authorizing HIM " to execute and perform every act in relation to the real estate, with like effect that trustees duly appointed under the said act might have done, and that HE apply the whole of the interest and income of the said property to the maintenance and support of his family and the education of his children;" and further providing that " no sale of any part of the said estate shall be made by the said Clarke until he shall have procured the assent of the chancellor to such sale, who shall, at the time of giving such assent, also direct the mode in which the proceeds of such sale shall be vested in the said Clarke as trustee; and, further, that it shall be the duty of the said Clarke annually to render an account to the chancellor, or to such person as he may appoint, of the principal of the proceeds of such sale only, the interest to be applied by the said Clarke in such manner as he may think proper for his use and

benefit, and for the maintenance and education of his children."

In July, 1815, an order was made by the chancellor, on the petition of Mr. Clarke, authorizing him to sell and dispose of the *eastern moiety* of the estate, " to be divided by the line in the manner for that purpose mentioned in the said petition," the sales to be made under the direction of a master, and the proceeds to be paid to the master, and applied and invested according to the directions of the order.

In 1816, a third act was passed, authorizing Clarke, " under the order heretofore granted by the chancellor, or under any subsequent order, either to mortgage or to sell the premises which the chancellor has permitted, or hereafter may permit him to sell, and to apply the money so raised, by mortgage or sale, to the purposes required by the chancellor, under the acts " theretofore passed.

In March, 1817, the chancellor, upon the petition of Mr. Clarke, made an order that Mr. Clarke be authorized to sell the *southern moiety* of the said estate, . . . . *instead of the eastern moiety*, as permitted and directed by the orders theretofore made, and further authorizing him to mortgage all or any part or parts of the said southern moiety of the said estate, if in his judgment it would be more beneficial to mortgage than to sell the same; and to convey any parts of the southern moiety, in satisfaction of any debts due from him, upon a valuation to be agreed on between him and his respective creditors: provided, that every sale and mortgage and conveyance in satisfaction, that might be made by the said Clarke, should be approved by one of the masters of the court, &c.

In October, 1818, Clarke executed a deed of twenty lots to one McIntyre. The consideration recited in the deed is the indebtedness of the grantor to the grantee " in a large sum of money," and $3750 paid.

In this state of things, Clarke having died in 1826, leaving children, Mrs. Williamson and others, these all now brought suit against Suydam to recover two lots *in the western moiety of the estate, as first divided*, held by him under title from Mc-

Intire. The court below held the title of the defendant good. The correctness of such view was now the matter here.

To understand the case better, it is necessary to state that these statutes and what was done under them had been the subject, previous to the present case, of consideration in the State courts of New York, as, also, in this court. The present case itself had been here twice before.

Questions under the statutes first arose in the courts of New York, in *Sinclair* v. *Jackson*,[*] in which case the court declined to express an opinion, respecting " the constitutionality of the laws, or the efficacy of the proceedings under them." The next case was *Cochran* v. *Van Surlay*,[†] where the Court of Errors, by a much divided court, held, that the statutes were constitutional, and that the proceedings shown in that case had been taken in conformity to the statutes.

After this decision was made, proceedings under these statutes came before the courts of the United States, and on certificate of division were decided by this court in *Williamson* v. *Berry*,[‡] *Williamson* v. *The Irish Presbyterian Congregation*,[§] and *Williamson* v. *Ball*.[||]

This court then decided various questions, which arose respecting the conformity of the proceedings to the requisitions of the statutes. But the decision in *Clarke* v. *Van Surley*, having been so far from unanimous, the majority of this court thought that the questions might be examined anew, and their view was different from that of the majority in the State court. The *present* case, which, as already mentioned, had been here twice before, was first decided by the Circuit Court, and in conformity to the decisions of this court just mentioned. Coming here again[¶] the judgment was reversed, on the ground that *subsequently* to the cases already referred to in this court, the courts of New York had, in *Towle* v. *Forney*,[**] and *Clarke* v. *Davenport*,[††] reiterated the decision in *Cochran* v. *Van Surley*, and thus by repeated decision had

---

[*] 8 Cowen, 579.      [†] 20 Wendell, 365; S. C., 15 Id. 439.
[‡] 8 Howard, 495.      [§] 8 Howard, 565.     [||] 8 Howard, 566.
[¶] 24 Howard, 433.      [**] 14 New York, 426; S. C., 4 Duer, 164.
[††] 1 Boswell, 96.

established in a way which, by its unanimity, had fixed what was decided a law of property, which the Federal courts must now enforce, whatever might be their own opinion or decision.

*Mr. David Dudley Field, for the plaintiff in error:*

Since this court has thus determined, that it will look only to the State courts for the exposition of statutes and documents affecting the title to land, even though it may have previously adjudged that such exposition was erroneous, and however contrary to reason that exposition may be, the plaintiffs must abstain from debating any of the questions so resolved. But two questions remain that have never been passed on by any court, and these we now make:

I. The power to partition the estate into two equal parts was *exhausted* by the partition into an eastern and western portion.

II. The discharge of the trustees by the legislature of New York was in contravention of that clause of the Constitution of the United States, which declares that no State shall pass any law impairing the obligation of contracts.

These two points Mr. Field argued at length.

No opposing counsel appeared in this case. In one quite like it— *Williamson v. Moore*—the defendant was represented by Mr. *H. E. Davies*, who contended—

1. That it was a matter of necessity, in the condition of his health, that Bishop Moore should be discharged, and also that the two female trustees named should be discharged, and that provision by law should be made for the appointment of competent and proper trustees.

2. That both the questions now raised had been in fact decided in the State courts and in the last decision in this court.

Mr. Justice CLIFFORD delivered the opinion of the court.

The action was ejectment to recover the possession of two lots of land, situated in the city of New York, and numbered sixty-four and sixty-five, as delineated on a certain map made

by the city surveyor. Exceptions were taken by the plain-
tiffs to the instructions of the Circuit Court, in directing the
jury to return a verdict for the defendant. Judgment was
accordingly rendered for the defendant, and the plaintiffs·
sued out this writ of error.

Detailed statement of the material facts of the case may
be found in the reported decisions of this court, when the
case was before the court on two former occasions.* Accu-
rate report of the material facts involved in the controversy
is also given in the case of *Williamson* v. *Berry,*† which was
substantially overruled by the decision of this court, when
the case was last before the court prior to the present hear-
ing.

Prior to her death the land in controversy belonged to
Mary Clarke, who died in 1802, having devised the same to
three persons in trust to receive the rents, issues, and profits
thereof, and to pay the same to Thomas B. Clarke during
his natural life, and upon his death, in further trust to con-
vey the same to his lawful issue living at his death, in fee;
and if he should not leave any lawful issue at the time of his
death, then, in the further trust, to convey the premises to
Clement C. Moore and his heirs, or to such person in fee
as he might by will appoint, in case of his death prior to the
devisee of the life estate.

Admitted facts are that Thomas B. Clarke died on the
first day of May, 1826, leaving three children—Catharine,
Isabella, and Bayard—who, with the husbands of the two
daughters, were the original plaintiffs. Two of the trustees
died before the devisee of the life estate, and the survivor
died on the fourth day of December, 1838. Title and right
of the plaintiff to possession are complete, unless the defend-
ant can establish a valid alienation of the property. He
deraigned his title from Thomas B. Clarke, alleging that he
was authorized by certain private acts of the legislature of
the State of New York, and by certain orders of the chan-

---

* Suydam *v.* Williamson, 24 Howard, 427; Same *v.* Same, 20 Id. 427
† 8 Id. 495.

cellor of that State, to make the conveyance.    Clarke con-
veyed to Peter McIntire by deed of the twentieth of October.
1818, and McIntire conveyed by deed of the thirtieth of Jan-
.uary, 1830, to Elijah Humphreys, and the plaintiff also intro-
duced the deed from Philo T. Ruggles, one of the masters in
chancery of the State, of the nineteenth February, 1845, to
James H. Suydam, the defendant.    By the act of the first
of April, 1814, the Court of Chancery was authorized, on
the application of Thomas B. Clarke, to constitute and ap-
point one or more trustees to execute and perform the several
trusts and duties specified in the will of Mary Clarke, in the
place of the testamentary trustees; and it also provided that
the trustees last named " are hereby discharged from the
trusts in the said will mentioned."

Provision was also therein made that the new trustees
should, as soon as conveniently might be, partition and
divide the land into two equal parts, one moiety whereof
should be held by them to the uses and upon the trusts
declared in the will, and the other moiety should be sub-
divided by the trustees, or the major part of them, into so
many lots as they, or the major part of them, might think
most likely to effect an advantageous sale thereof.    Having
completed the subdivision, as required, the provision was
that the trustees, or a majority of them, were authorized and
required, within a convenient time thereafter, not to exceed
six months, except at the request of the petitioner, to sell
and dispose of the last subdivided moiety, and that they
should invest the proceeds as they, or a majority of them,
should deem most for the interest of the parties concerned,
paying the interest or income, except a certain portion of it,
to the petitioner, and reserving the principal for the trusts
of the will.

On the application of said Thomas B. Clarke a supple-
mental act was passed March 24th, 1815, authorizing and
empowering the petitioner to execute and perform every act,
matter, and thing in relation to the real estate mentioned in
the preceding act, in like manner and with like effect that
trustees duly appointed under it might have done, and that

he might apply the whole of the interest and income of the property to the maintenance and support of his family, and the education of his children; and further providing that no sale of any part of the real estate should be made by him until he should have procured the assent of the chancellor to such sale, who, at the time of giving such assent, was also required to direct the mode in which the proceeds of such sale, or so much thereof as he should think proper, should be vested in the petitioner as trustee, and that it should be the duty of the trustee annually to render an account to the chancellor, or to such person as the chancellor might appoint, of the principal of the proceeds of such sale, leaving the interest to be applied by the trustee in such manner as he might think proper, for his use and benefit, and for the maintenance and education of his children.

Pursuant to the authority therein conferred, the chancellor, on the petition of said Thomas B. Clarke, made an order, dated the third day of July, 1815, authorizing him to sell and dispose of the eastern moiety of the estate, "to be divided by the line, in the manner for that purpose mentioned in the said petition;" the sale to be made under the direction of a master, and the proceeds to be paid to the master, and applied and invested as directed in the order.   Subsequently a second supplemental act was passed, approved March 29th, 1816, which authorized the petitioner, under the order heretofore granted by the chancellor, or under any subsequent order, either to mortgage or to sell the premises which the chancellor has permitted, or may hereafter permit him to sell as trustee under the will, and to apply the money so raised by mortgage or sale to the purposes required or to be required by the chancellor, under the legislative acts to which reference is made.   Application was accordingly made to the chancellor, May 30th, 1816, for authority to proceed under the second supplemental act, and an order was passed on that day authorizing him to mortgage instead of selling the lands embraced in the preceding order of the court; the moneys thereby procured, and the debts therewith extinguished, to be appropriated and adjusted in the

same manner and under the same checks as was provided in the prior order.

Such power, however, proved to be unavailing, as the trustee, on the eighth day of March, 1817, represented to the chancellor that, notwithstanding that authority, he could not effect any sales or raise any money upon mortgage without a sacrifice of property greater than he felt warranted to make; that the pressure of his debts and the necessities of his family required some measures for their relief. The measures of relief suggested were that the estate should be divided by an eastern and western, instead of a northern and southern line, and that power should be granted to him to sell or mortgage the southern, instead of the eastern moiety of the estate, as directed in the prior order. Authority was accordingly given to the trustee by an order made March 15th, 1817, authorizing him to sell and dispose of the southern moiety of the estate, the same being divided by a line running east and west through the centre of Twenty-sixth Street, &c., instead of the eastern moiety of the estate, as permitted and directed by the orders heretofore made in the premises. By virtue of that order he might convey any part of the southern moiety in payment and satisfaction of his debts, upon a valuation agreed on between him and his respective creditors, but it was required that every sale, mortgage, or conveyance he might make for that purpose should be approved by a master of the court, and that a certificate of such approval should be indorsed upon every sale or mortgage that should be made by the trustee. Power was also conferred upon him in the order to receive and take the moneys arising from the premises, and apply the same to the payment of his debts, and to invest the surplus in such manner as he should deem proper to yield an income for the maintenance and support of his family.

Clarke, October 20th, 1818, conveyed twenty lots to Peter McIntire, including the two mentioned in the declaration. Consideration, as recited in the deed, is that the grantor was indebted to the grantee " in a large sum of money," and also of three thousand seven hundred and fifty dollars, lawful

money.   The proofs show that the defendant was in posses-
sion, and the actual occupant of the premises at the com-
mencement of the suit on the thirteenth day of August, 1845,
and that the two lots in question are situated within the
southern moiety, and were also within the western moiety
as the estate was first divided.

Objections were made by the plaintiff to the three orders
of the chancellor when offered in evidence by the defendant,
but the court overruled the several objections, and the plain-
tiff excepted to the rulings.   He also objected to the admis-
sibility of the deed of Charles W. McIntire, also to the in-
dorsement thereon of the approval of the master, and also
to the admissibility of the several other deeds introduced by
the defendant, but the court overruled the several objections,
and the plaintiff excepted to the respective rulings, as more
fully explained in the record.

Testimony was also introduced by the defendant proving
that there was formerly on file in the Court of Chancery
certain papers in which were the orders of the chancellor,
but that they were lost, and the witness testified that he
knew nothing of their genuineness, whereupon the defend-
ant rested, and the court ruled that he was entitled to a ver-
dict, and the verdict and judgment were rendered in his
favor, and the plaintiff excepted and sued out this writ of
error.

1. Questions touching the validity of the before-mentioned
acts of the legislature of the State were first considered judi-
cially in the case of *Sinclair* v. *Jackson*,* in the court for the
correction of errors, but the decision turned upon another
point, and the court cautiously avoided expressing any opin-
ion as to their validity.   The next case was *Cochran* v. *Van
Surlay*,† decided originally in the Supreme Court of the
State.   Statement of the court in that case was that when
the first act was passed all the parties interested in the trust
estate, who were capable of acting for themselves, were be-
fore the legislature, and were applicants for the law.   Be-

---

* 8 Cowen, 579.                    † 15 Wendell, 439.

sides Clarke, the tenant for life, in his own right, and the natural guardian of his children, to whom the remainder was limited, there was Clement C. Moore, the contingent remainder-man in fee, and the trustees named in the will, who had the whole legal estate, and represented the minors as fully as they could be represented in any form.

Leading features of the acts are that they changed the trustees appointed by the will and authorized a sale of a part of the estate without the consent of the minors, who were entitled to the remainder in fee after the termination of the life estate. Pursuant to their request the act of April 1st, 1814, discharged the trustees named in the will from the execution of the trusts and authorized the court of chancery to appoint one or more trustees in their place. Subsequent act passed March 24th, 1815, authorized and empowered Thomas B. Clarke to execute and perform every act, matter, and thing in relation to the real estate, in like manner and with like effect that trustees duly appointed under the former act might have done. Decision of the court was that the court of chancery, without an act of the legislature, could have discharged the trustees named in the will and might have appointed others in their place, and that the act of the legislature was not an act beyond their constitutional power, as the mere substitution of a new trustee could neither defeat the trust nor divest the rights of those beneficially interested in the property. Critical examination of the power to sell, as conferred under the act of April 1st, 1814, and as modified under the act of March 24th, 1815, and of the power to mortgage or sell as conferred under the act of March 29th, 1816, was made at the same time, and the unqualified conclusion reached was that the several acts were valid and constitutional, although they did not extend to other cases of a like character.

Objections were also taken that the orders of the chancellor were not made in pursuance of the acts of the legislature, but those objections were overruled as unsupported in fact or as entirely unavailing, unless presented in some direct proceeding, as by appeal or by application to the chancellor

for new orders and directions in the premises. Conclusions of the court were: (1) That the acts of the legislature authorizing the sale of the property for the support and maintenance of the tenant for life, and of his family, and the education of his children, were fully warranted by the State constitution, and that they did not in any manner conflict with the Constitution of the United States; (2) That the orders of the chancellor in carrying those provisions into effect were regular and proper, and that the deeds of conveyance were sufficient to convey the title to the estate to the grantees.

Dissatisfied with the judgment the plaintiff sued out a writ of error and removed the cause into the court for the correction of errors, where the questions were again fully argued, but the judgment of the Supreme Court of the State was in all things affirmed.*

Pending that litigation certain suits were commenced in the Circuit Court of the United States for the Southern District of New York, and the justices of that court being opposed in opinion in respect to the principal question involved in the controversy, they were certified into this court for decision, and the majority of this court adopted in substance and effect the views of the minority of the court for the correction of errors.†

Same questions in respect to the same estate were subsequently presented to the Superior Court of the City of New York, and the court adopting the State decisions, held that those acts of the legislature were not inhibited by the State constitution, nor by that clause of the Constitution of the United States which declares that no State shall pass any law impairing the obligation of contracts.‡

Judgment was for the plaintiff, and the defendant insisting that the views of this court, as expressed in the answers given on the occasion when certain questions were certified here by the circuit judges of that district, appealed to the Court of Appeals that the questions might be re-examined.

---

* Cochran *v.* Surlay, 20 Wendell, 371.

† Williamson *v.* Berry, 8 Howard, 495.

‡ Towle *v.* Forney, 4 Duer, 164.

Express decision of the Court of Appeals was that the judgment of the Court of Errors in *Cochran* v. *Surlay*, was a final determination of the court of last resort in the State, not only upon all the questions of law in the case, but upon the identical title in controversy, and that they ought not to re-examine the grounds of that decision. They also held that, as between judgments of their own courts and those of the Federal government, where there is a conflict between them, they ought to follow their own decisions, except in cases arising under the Constitution and laws of the Union.*

Present case was first decided in the Circuit Court in favor of the plaintiff, but the defendant being dissatisfied removed cause into this court by writ of error, where it was affirmed because there was no bill of exceptions.† By consent a bill of exceptions was subsequently allowed and the cause brought here on a second writ of error. Parties were again fully heard and the court came to the unanimous conclusion that the decision of the Court of Errors, sanctioned by the subsequent decision of the Court of Appeals, established a rule of property in that State which it was the duty of this court to follow in questions of real property situated in that State.‡

Plaintiff admits, in view of the ruling of this court in that case, that it will regard the decision of the State courts as rules of decision in respect to titles to real estate, that most of the questions presented in this record are closed in favor of the defendant. Where any principle of law establishing a rule of real property is settled in the State court the same rule will be applied by this court in the same or analogous cases. Conceding that the rule established in that case was to that effect, still the plaintiff contends that two questions arising in the record remain open for discussion. One is a question touching the construction of the second section of the act of April 1st, 1814, which authorized the trustees to partition and divide the estate into two equal parts for the

---

* Towle *v.* Forney, 14 New York, 428.
† Suydam *v.* Williamson, 20 Howard, 429.
‡ Same *v.* Same, 24 Howard, 427.

purpose before mentioned, which, as he insists, was never before a State court; and that the other is a question which belongs to this court to determine under the Constitution of the United States.

Questions not determined in the State court, because not raised and presented for decision by the complaining party in the court below, will not in general be examined in this court, but it is not necessary to place the decision in this case upon any such ground. Authority to partition is conceded, but the argument is that when the estate was divided into an eastern and western partition the power was exhausted. Assent of the chancellor was given in the first order to the sale by the petitioner of the eastern moiety, to be divided by the line in the manner for that purpose mentioned in the petition. By the second order the chancellor gave his assent that the petitioner might mortgage instead of selling the estate embraced in the former order. Third order bears date on the fifteenth of March, 1817, and by it the chancellor gave his assent that the petitioner might sell and dispose of the southern moiety of the estate, the same being divided by a line running east and west, instead of the eastern moiety as permitted and described by the previous orders. Even regarded as an original question there can be no doubt of the power of the chancellor to make that order under the act of the twenty-ninth of March, 1816, as construed in connection with the preceding acts to which it is supplemental.

Reference to the principal case* will show that the order in question was directly under the consideration of the court, and it must be regarded as a necessary intendment that the point now raised was determined adversely to the views of the plaintiff. Same remarks also apply to the case of *Towle* v. *Forney*, where this order, as well as those of prior date, were again before the court. Judgment of the court was that the title of the plaintiff in that case was valid, which affirmed the power of the chancellor to issue the orders.

---

* Clarke v. Van Surlay, 15 Wendell, 447.

Appeal was taken by the defendant to the Court of Appeals, where the judgment was affirmed.*

Careful examination was also given to that order by this court when the case was here on the last occasion before the present hearing. Thorough examination of the whole case was made at that time, and the court in conclusion say that there is no room for doubt as to what the settled opinion of the State courts is in reference to this title, and therefore that there could be no hesitation as to the proper judgment to be rendered.

Second question presented by the plaintiff is that the discharge of the trustees named in the will by the legislature of the State, was in contravention of that clause of the Constitution of the United States which declares that no State shall pass any law impairing the obligation of contracts.

Whenever the title of the estate conveyed has been put in issue the validity of that act of the legislature has been drawn in question, and the decision in every case, except the one first made in this court, has sustained the validity of the act. None of the adjudications in form dispose of the question, but the clear and necessary intendment of each is to that effect, especially the last decision of this court, as it reverses the former views of the court in respect to the whole merits of the controversy. All the persons interested in the will who were capable of acting for themselves were before the legislature when that act passed, and the trustees named in the will were applicants for the law.

Trustees may undoubtedly be discharged by the chancellor, even without an act of the legislature, and as the mere substitution of a new trustee could neither defeat the trust nor divest the rights of those interested, it is not possible to see how the proposition of the plaintiff can be sustained.

The rights of the trustees were not invaded, as they asked to be discharged; and the *cestuis que trust* cannot complain, for the reason that the substitution of a new trustee did not defeat or impair the trust or divest their interest. But the

---

* Towle *v.* Forney, 14 New York, 426.

true answer to the proposition is that there is no matter of contract involved in the substitution of new trustees, with the assent of the chancellor, in the place of those named in a testamentary devise, unless the act be one which infringes some vested right of the trustees.  Nothing of the kind is pretended in this case and there is no foundation for the proposition.

JUDGMENT AFFIRMED WITH COSTS.