MARGARET KIPP et al., complainants,

*v.*

FIDELITY TITLE AND MORTGAGE GUARANTY COMPANY et al., defendants.

———

ANNA HATHAWAY et al., appellants,

*v.*

JOHN MILTON, trustee, et al., respondents.

[Submitted December, 1934. Decided February 11th, 1935.]

*Messrs. McCarter & English,* for the appellants.

*Messrs. Pitney, Hardin & Skinner,* for the respondents Edgar G. Wandless et al.

*Mr. David Cohn,* for the respondents United States Trust Company et al.

*Mr. John Milton* and *Mr. William Harris,* for the respondents John Milton and Frank H. Smith, trustees.

PER CURIAM.

This is an appeal from a decree of the court of chancery directing the sale of the assets of the defendant Fidelity Title and Mortgage Guaranty Company, which had previously been adjudged insolvent and which was being administered by trustees appointed by the court of chancery.

The factual situation is set out at length in the opinion of Vice-Chancellor Bigelow in the court below, reported at *116 N. J. Eq. 409,* and it is not necessary to restate it at length here. It appears that a plan of liquidation was agreed upon by the holders of approximately eighty-seven per cent. in amount of all outstanding series of mortgage certificates and bonds. This plan was approved by the court, with certain modifications, and a decree for public sale was made. The group above mentioned purchased all the assets at the sale for a bid of $2,374,711.85. The total amount of the principal of the outstanding bonds being $8,322,950, it appears that the sale price amounts to about twenty-eight and one-half cents on the dollar of all outstanding claims. By the terms of the decree bidders were permitted to apply on the purchase price securities held by them in the proportion that their holdings bore to the total outstanding, so the group who purchased are able to pay some eighty-seven per cent. of the purchase price by surrender of securities and the balance in cash.

The sale was confirmed by the court of chancery and no appeal has been taken from the decree of confirmation.

In addition to the approximately eighty-seven per cent. of the security holders who expressly joined in the plan, some have made no appearance and are not now in a position to object thereto. The appellants hold securities to the face value of $5,600, less than one-tenth of one per cent. of the total.

The parties have signed a stipulation by which it is admitted that the factual findings of the court below are correct, and it is stated by the appellants that the appeal involves only questions of law.

It is stated that by this sale to a group for the purpose of liquidation the court of chancery has abdicated its functions and deprived the appellants of their right to have the corporation liquidated under the supervision of the court. But obviously this is not so. It is within the power of the court, when it appears to the best interests of creditors, to direct a sale of all the assets at a fair and adequate price. What was done in this case amounts to no more than this. It is true that the assets were purchased by security holders, but under the decree for sale it was open to others to bid and there was nothing about the plan which prevented them from doing so. It can hardly be said that the holders of so small a proportion of the outstanding claims are in a position to demand that the matter be kept in litigation for a further extended period, in the absence of a showing that their substantial rights have been invaded by the decree.

The provision of the decree which permitted the use of certificates and bonds in payment of the purchase price is objected to by appellants. The argument seems to be that a sale for cash only should have been directed. However, this is the usual and practical method of conducting such sales and has been approved by the courts. In *Rospigliosi* v. *New Orleans M. and C. Railroad Co.* (*C. C. A.*), *237 Fed. Rep. 341*, it was said: ..

"It is charged that by the terms of sale competitive bidding was prevented, that said terms destroyed equality

between the bondholders and all other persons, and that they resulted in but one bid for the property. The only fact alleged to sustain this charge is the decree itself, and the court puts no such construction on the decree. It provides, as is usual in such cases, for a certain amount of money to be deposited in cash or certified check with the special master, or, in lieu of a certain amount of cash, bonds of the railroad company. If any bondholder desired to bid, or other person, corporation, or syndicate desired to do so, and owned no bonds, but was financially able to buy a railroad of the size and character of the one in question, he could have raised the amount of money to make the necessary deposit; or if the objectors herein desired to do so, and were in fact bondholders, they had the right and opportunity to co-operate with their co-bondholders in the matter. There was, in the opinion of the court, nothing in the decree to prevent their doing so. The decree did not, in the terms of sale provided therein, prevent competitive bidding or limit or restrict the bid."

In the instant case, we cannot say that as a matter of law the terms of the decree for sale put a limit on competitive bidding.

If the complaint in this respect is that the sale price was inadequate, then, of course, the appellants' course was to object to the confirmation of the sale and appeal to this court in the event of an adverse decision. As pointed out, this has not been done.

The appellants also insist that the decree in effect compels them to join with the majority bondholders in the plan of liquidation. This argument is based upon the contention that the decree did not provide for the payment of any cash by the successful bidders nor for payment to appellants in cash of their proportionate share of the sale price. The respondents, however, do not interpret the decree in this way, but concede that they are required to pay in cash that part of their bid which is in excess of the eighty-seven per cent. represented by their securities and concede that appellants are entitled to their proportionate share in cash, which

respondents undertake to pay and which they should pay. This objection to the decree must therefore fail.

On the whole case, we are of the opinion, the finding of the facts being concededly correct, that the decree for sale cannot be said to be unfair or improper as a matter of law, and that the appellants will receive all that they are entitled to under *Moore* v. *Splitdorf Electrical Co., 114 N. J. Eq. 358,* namely, their proportionate share in cash of the proceeds of a conventional sale of the assets.

The decree is affirmed.

*For affirmance*—PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, DEAR, WELLS, JJ. 11.

*For reversal*—None.