The trustees in the above entitled matter, appointed under chapter 3, laws of 1934, filed a petition under that act, as amended, through which they sought authority, subject to *Page 150 
the supervision and approval of the court, to exercise and perform certain powers and duties. Thereupon an order to show cause was issued on July 11th, 1935. The order was not argued on the original return day, but was continued from time to time until March 30th, 1936, when it was argued. It, among other things provides:
"(4) In the name of the corporation or otherwise, to demand, sue for, collect, receive and take into their possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, papers, choses in action, bills, notes and property of every description of such corporation or any trust created by or the result of any instruments issued by the corporation in the course of its business or the result of any conduct of the corporation, and in their discretion to compound and settle with any debtor or creditor of such corporation or any such trust, or with persons having possession of its property or in any way responsible at law or in equity to such corporation or any such trust, upon such terms and conditions and in such manner as they shall deem just and beneficial to the corporation or trust, and in case of mutual dealings between the corporation and any person, to allow just set-offs in favor of such persons in all cases, in which the same ought to be allowed according to law and equity.
"(11) In the name of the corporation or otherwise, to receive, collect and sue for the interest and principal of any bonds, mortgages or other security held by or under the control of such corporation or in any trust created by or the result of any instrument issued by said corporation in the course of its business or as a result of any conduct of the corporation or with respect to which the corporation has an agency by any instrument or by any foreclosure or other action thereon, take title to the property sold as a result of such action or deeded by a mortgagor or owner, in the same form and manner as they may take title to foreclosed properties;
"(13) To turn over to holders of guaranteed mortgage investments, mortgages to which they are entitled under the *Page 151 
assignments or certificate or other, instruments held by them, or the properties held as a result of the foreclosure thereof, or the foreclosure decree in such case and to agree upon and compound and settle claims by or against the corporation in respect thereto, including the adjustment and the payment or collection or postponement or securing the equities or interests of the corporation therein by reason of advances made by it for interest, principal or other payments guaranteed by it or for taxes or other expenses;
"(19) To secure the repayment of the certificates or other obligations of the trustee by the mortgage, pledge, assignment, transfer in trust, or hypothecation of any or all of the property whether real, personal or mixed of such corporation or of the trusts which may come to their possession or be in their control;
"(21) To administer the properties, rights, credits and interests which may come to their possession as one trust irrespective of the terms of any instruments made by said corporation in the conduct of its business, keeping proper books of account from which, in the event of ultimate liquidation the rights of the interested parties may be determined, charging against the separate interests of the parties such proportion of the cost of the general administration, including the repayment of any indebtedness incurred by the trustees, as the court may, upon such notice as it may prescribe, determine just and equitable;
"(41) To authorize and direct the Hackensack Trust Company to deliver to the trustees any and all property of whatever kind or nature which it has in its possession or under its control belonging to the corporation or any trust created by or the result of any instruments issued by the corporation in the course of its business or the result of any conduct of the corporation."
Opposition to the adoption of these quoted paragraphs, in substance, took the following form: (1) "To grant the trustees the powers they seek, will be to destroy the rights of the Hackensack Trust Company, and will be a taking of the property of the Hackensack Trust Company without due *Page 152 
process of law in contravention of the fourteenth amendment of the constitution of the United States, and a denial to the said Hackensack Trust Company of the equal protection of the law required to be given to it by the said fourteenth amendment of the constitution of the United States." And that (2) "the said statute is unconstitutional and void in that it violates section 10 of the constitution of the United States, providing that no state shall pass any law impairing the obligation of contracts; and that the said statute is unconstitutional and void in that it is contrary to the provisions of secion 7, article 4, of the constitution of the State of New Jersey, which provides that the legislature shall not pass any law impairing the obligation of contracts, or depriving a party of any remedy, or enforcing a contract which existed when the contract was made." (3) "To said statute, if so construed as to authorize this court to substitute the trustees appointed by it pursuant to the said statute, for the trustee named in the respective trust indentures, would destroy the vested rights of the Hackensack Trust Company and would be a clear invasion of the trust company's rights under both the state and federal constitutions, and in that the said statute contravenes article 4, section 7, placitum 4 of the constitution of the State of New Jersey, in that said act embraces more than one object, and in that the provisions of the said statute purporting to authorize the transfer of the said trusts to the trustees appointed by the court of chancery, pursuant to its provisions, are objects not embraced in the title of such act, and in that the said act attempts, under a different title, to impair the contractual rights of the Hackensack Trust Company and the North Jersey Title Insurance Company." (4) Further objection is made that "the language quoted in said order is sufficiently comprehensive in its scope to include the respective trusts created by the North Jersey Title Insurance Company, in which the Hackensack Trust Company was made trustee, and under which, based upon a valid consideration, the Hackensack Trust Company has acquired rights."
The Hackensack Trust Company, by a trust agreement, *Page 153 
with the North Jersey Title Insurance Company, became trustee, and, as such, acquired from the North Jersey Title Insurance Company certain guaranteed mortgages, bonds, obligations, participating mortgage certificates, evidences of indebtedness, investment certificates, other rights and evidences of indebtedness. The said petition and order seek the removal of the trustee appointed under the trust indenture, and to acquire the rights and assets which are the subject thereof. They (the petitioning trustees) base their claim under the powers granted them under the provisions of chapter 3 of the laws of 1934, section 2, which, in part, reads as follows:
"* * * the Commissioner of Banking and Insurance shall become trustee of the said corporation, its assets and property, rights, credits and interests, and of any subsidiary corporation (herein included in the term `corporation' or `company'), its assets and properties, rights and interests, and of any trust or trustscreated by or the result of any instrument issued by saidcorporation in the course of its business or the result of anyconduct of the corporation, the trust or trusts to beadministered by the said Commissioner of Banking and Insurance
subject to the supervision and control of the court of chancery in the administration suit and as a trust administered in that court * * *."
This recited portion of the statute is clearly a legislative direction vesting in the trustees appointed under the act, the assets, properties, rights, credits and interests of the company, and the control of any trust or trusts created by, or the resultof, any instrument issued by the company. Their conduct of the administration of such acquired assets and trusts, is, however, subject to the control and supervision of the court of chancery. They must apply to the court for instructions in every phase of their administration. There is no doubt in my mind that at the time the order was made, under the act, appointing them trustees for the title company, they, thereupon became entitled to all rights, interests and powers that were vested in the Hackensack Trust Company under its trust appointment. That right is created by legislative mandate, *Page 154 
and it is not the result of judicial warrant. The alleged constitutional rights which the Hackensack Company says it acquired under the indenture of trust are challenged, and their claim to property rights, under the trust agreement, is vigorously denied.
Counsel for the petitioners contends that the Hackensack Trust Company, as trustee, acquires no right of property whatever under the trust indenture within the meaning of the constitutional guarantee. He charges that its status is summarized in a clear cut pronouncement of the law on the subject in an opinion laid down in Metcalfe v. Union Trust Company of New York, 181 N.Y. 39
(at p. 54); 73 N.E. Rep. 498 (at p. 509), as follows:
"At common law, and under our revised statutes, the trustee's tenure has been under the supervisory power of courts of chancery or of equity, and it was dependent upon conditions having no relation to any interest in his estate * * *. The argument that the constitutional guaranty against the deprivation of one's property without due process of law has its application to the case of this trustee is, in my opinion, unsound. That guaranty exists for the protection of the citizen's property against arbitrary legislation, and every arbitrary proceeding which does, or may affect it. But what is there about the right or estate of a trustee which involves the idea of `property' as that term is commonly understood, and as it was undoubtedly employed by the framers of our federal and state constitutions? To the ordinary mind — and that is one of the best tests in interpreting statutes — the term `property' suggests some unrestricted or exclusive right to that which has been created or acquired. It is an inherent right to the dominion over and the beneficial enjoyment of some valuable right or interest. How can that be predicated of the estate of a trustee? He exercises certain powers for the sole benefit of the cestui que trust. He has no beneficial interest, and he can be removed whenever, in the judgment of a court of equity and by the exercise of its inherent power, it becomes necessary, and independently of the instrument of his appointment. Perry *Page 155 Trusts 276. His rights or interest lacks those elements of ownership which are associated in our minds with the idea of property."
The dissenting opinion of Chief-Justice Cullen, concurs with the majority to the extent that he agrees there is no deprivation of property without due process; he says (73 N.E. Rep at p.504):
"The tenure by a trustee of his office clearly shows he has no property right therein. He may be removed at any time by a court of equity for causes entirely insufficient to justify depriving one of his property."
The trust involved in Metcalfe v. Union Trust Company of NewYork, supra, was testamentary in character. In the instant case, the trust was effected through an agreement between the parties. The incidents of the trust in the Metcalfe, and in the instant case, are not unlike. In the Metcalfe Case the principles enunciated are unlimited and have a very wide application. The rule therein expressed applies, with equal force, to a deed of trust. In Marshall v. Kraak, 23 App. D.C. 129, the court says (at p. 135):
"The trustee in a deed of trust by way of mortgage has no vested right or beneficial interest in anything except to execute the trust when he is called upon to do so, if at the time he is competent to execute it and to receive his compensation therefor * * *. Such being the tenure upon which he has received and holds the legal estate, it is competent for the legislative authority to provide a summary mode for his removal, and for the divesting of his title * * *. There is no unconstitutional or fundamental right of property impaired by such provision; for the trustee is substantially no more than an agent of the mortgagor and mortgagee or cestui que trust to carry into effect the contract between them, for which purpose and only for which purpose he is vested with the legal title without beneficial interest therein."
The tenure of a trustee is, in a proper case, within the control of a court of equity. That power of the court is clearly expressed in Marshall v. Kraak, supra, and Metcalfe *Page 156 
v. Union Trust Company of New York, supra. Those cases demonstrate that the trustee has no property right in the trustres as such rights are guaranteed within the language of the constitutional prohibition against the deprivation of property without due process of law; and that, no matter how a trust arises, whether by the sole act of a testator, or the united act between parties to an agreement, equity nevertheless controls. Vice-Chancellor Berry expresses this power in an exhaustive opinion in Smith v. Washington Casualty Insurance Co.,110 N.J. Eq. 122. In this case chancery took jurisdiction of a trust created by the possession of the assets of an insurance company by the commissioner of banking and insurance upon the latter's offer to abandon. One of the outstanding inherent powers of equity is to remove and substitute trustees under certain circumstances. This power is broadened and enlarged by the legislature in chapter 3 of the laws of 1934. Certainly, neither this court, or any other court, has the power to change the language, or the terms, of parties to a contract. But, where a contract creates a trust, equity may, under certain conditions, assume jurisdiction and modify the terms of the instrument creating it.
In New Jersey National Bank and Trust Co. v. LincolnMortgage and Title Guaranty Co., 105 N.J. Eq. 557,
Vice-Chancellor Buchanan states the rule comprehensively and succinctly in the following language:
"Nor is there doubt as to the power of the court in the premises. It is of course quite true that ordinarily the trustee is bound, in the administration of the trust, by the terms of the trust, and that even this court has no right to authorize the trustee to depart therefrom; but it is also true that a court of equity, in its capacity as universal trustee, may in cases of emergency, for the preservation of the trust estate and the protection of the cestuis, authorize and direct the trustees to do acts which under the terms of the trust and under ordinary circumstances they would have no power to do. This power resides in the court of chancery as a part of its original inherent jurisdiction — its general administrative jurisdiction in cases of trusts." *Page 157 
Contracts, or agreements, or deeds, of trust, in many instances, are governed by the rules affecting trusts, rather than by those relating to contracts. I feel that the subject of the executed trust indenture upon which the Hackensack Trust Company relies for its right of property, is not such an instrument as is guaranteed by the state and federal constitutions against impairment. See People, by Van Schaick v.Title and Mortgage Guarantee Company of Buffalo, 264 N.Y. 69;190 N.E. Rep. 153; 96 A.L.R. 297. In this case, an appeal was taken, among others, by the Marine Trust Company of Buffalo, as depositary and trustee for the Title and Mortgage Guaranty Company of Buffalo. The Marine Trust Company of Buffalo was in somewhat the same situation as the Hackensack Trust Company appears to be in the instant case. The court of appeals considered the constitutionality of the Schackno act, which is analogous to our chapter 3 of the laws of 1934, and in its opinion, said:
"The depositary has appealed directly to this court from each of said orders * * * on the ground that the statutory provisions authorizing those orders are invalid under the constitutions of the state and of the United States. Upon this appeal, `only the constitutional question shall be considered and determined by the court.'"
The depositary argued that it was a violation of its constitutional rights to have the commissioner of banking and insurance substituted as trustee. The court, in answering this contention, discussed the police power of the legislature under the case of Home Building and Loan Association v. Blaisdell,290 U.S. 398; 54 Sup. Ct. 231, and then continued as follows (96 A.L.R. at p. 305):
"Ordinarily, the holder of certificates of an interest in guaranteed mortgages has no rights or duties in connection with the mortgage at least as long as the guaranty company is doing business and complies with its own undertakings. The guaranty company under its contract with the holder of the certificate may decide whether to foreclose or extend the mortgage, to waive or to resort to a remedy for any default. It assumes the risk of ultimate deficiency in payment of the *Page 158 
indebtedness secured by the mortgage, and maintains control of the primary obligation. In effect, the mortgages underlying the certificates are regarded by the parties as security for the obligation of the guaranty company. When the guaranty company becomes insolvent or ceases to do business, a situation arises not provided for in its agreement with the holders of the certificates."
The court then continues:
"The Schnackno act [section 4] provides that the superintendent, who has taken over a guaranty corporation for rehabilitation, or liquidation, `shall be authorized with respect to any bonds, mortgages or other security held by such guaranty corporation or otherwise, against which any mortgage investments have been issued, to do by himself or by his authorized agent, any of the following: * * *'
"Where the administration of property is the duty and part of the business of a corporation, taken over by a liquidator or rehabilitator, then the continued administration by him is merely an incident of the liquidation or rehabilitation proceedings, and deprives those interested in such property of no rights. Only where there is deprivation of rights is notice and opportunity to be heard in opposition necessary."
Justice Lehman, speaking for the court of appeals, made the following observation:
"It is said that in some minor particulars the powers of administration accorded to the superintendent of insurance are greater than the authorized powers exercised by the guaranty company. He may take from the depositary securities which the guaranty company agreed to leave in the custody of the depositary. The depositary had no property in or right to the securities so deposited. When the guaranty company became insolvent, the depositary had no duty or function except to hold the deposited securities till they could be delivered to some person authorized to conserve or administer the securities for the benefit of those entitled to their proceeds. A direction to deliver the securities to the superintendent of insurance, who has such authority, impairs no obligation of the contract." *Page 159 
In Williamson v. Suydam, 6 Wall. 723; 18 L.Ed. 967, the court upheld a statute authorizing a court of equity to discharge trustees named in a will and appoint new ones. The court, interalia, said:
"Second question presented by the plaintiff is that the discharge of the trustees named in the will by the legislature of the state, was in contravention of that clause of the constitution of the United States which declares that no state shall pass any law impairing the obligation of contracts."
 * * * * * * *
"The rights of the trustees were not invaded, as they asked to be discharged; and the cestuis que trustent cannot complain, for the reason that the substitution of a new trustee did not defeat or impair the trust, or divest their interest. But the true answer to the proposition is, that there is no matter of contract involved in the substitution of new trustees with the assent of the Chancellor, in place of those named in a testamentary devise, unless the act be one which infringes some vested right of the trustees."
In enacting chapter 3, laws of 1934, the legislature modified and curtailed the right of a trust company to continue its trust duties under an agreement made with a corporation for which a trustee had been appointed under the Mortgage Guaranty Corporations Rehabilitation act. The contract between the parties was, at the time it was made, subject to this reserved power of the state. That being so, I find it difficult to perceive how there can be an impairment of the obligation of contract, or trust indenture, under the circumstances. In Home Building andLoan Association v. Blaisdell, supra (290 U.S. at p. 435), the court said:
"While the charters of private corporations constitute contracts, a grant of exclusive privilege is not to be implied as against the state."
Chapter 3, laws of 1934, is a general act, affecting all corporations of the class therein named, and providing a general scheme for the conservation, rehabilitation, reorganization and liquidation of such corporations. An examination of the cases leads to the conclusion that the constitutional prohibitions *Page 160 
against the impairment of obligation, and deprivation of property without due process of law, are not always strictly applied; there is a certain amount of plasticity permitted to fit the circumstances. In Home Building and Loan Association v.Blaisdell, supra, the principle is expressed in the following language (p. 428):
"To ascertain the scope of the constitutional prohibition we examined the course of judicial decisions in its application. These put it beyond question that the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula."
Our own court of errors and appeals has to a certain extent recognized the proposition, and I make reference to its opinion in Hourigan v. Township of North Bergen, 113 N.J. Law 143;172 Atl. Rep. 785, where the court says:
"It is a well established doctrine that the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts entered into between individuals may be thereby affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals. While this power is subject to limitations in certain cases, there is wide discretion on the part of the legislature in determining what is and what is not necessary — a discretion which the courts ordinarily will not interfere with.
 * * * * * * *
"All contracts and all rights are subject to this power; and not only may regulations which affect them be established by the state, but all such regulations might be subject to change from time to time * * *."
See, also, Manigault v. Springs, 199 U.S. 473; Union DryGoods Co. v. Georgia Public Service Corp., 248 U.S. 372; NobleState Bank v. Haskell, 219 U.S. 104. *Page 161 
Counsel for petitioners has aptly stated that "mortgage guaranty corporations, like banking institutions, building and loan associations, and insurance companies are quasi-public corporations, peculiarly vested with a public interest, and so within the control of the legislature, that an incidental impairment of the obligation of contract is insufficient to constitute legislation affecting them invalid." In Milner v.Gibson, 249 Ky. 594; 61 S.W. Rep. 2d 273, 278, the court says:
"Banks and banking are proper subjects of legislative control and strictly within the internal police power of the state.Thompson on Corporations (1st ed.) § 640; Blaker v. Hood,53 Kan. 499; 36 Pac. Rep. 115; 24 L.R.A. 854; American SouthernNational Bank v. Smith, 170 Ky. 512; 186 S.W. Rep. 482, * * *. Contracts being subject to legislation enacted in the exercise of the police power, it is not invalid merely because of its incidental effect upon them. St. Louis Poster Adv. Co. v. St.Louis, 249 U.S. 269; 39 S.Ct. 274; 63 L.Ed. 599 * * *. Where made by parties, either one of whom is subject to statutory regulations, they must of necessity be subject to the exercise of the sovereign power of the government to enact legislation for the protection of the general welfare."
The test to be applied was recently restated by the United States supreme court in Treigle v. Acme Homestead Association,56 S.Ct. 408; 80 L.Ed. 391 (at p. 395):
"The appellee bases its entire argument in support of the challenged enactment upon the proposition that, as building and loan associations are incorporated for a quasi-public purpose, the state has a peculiar interest and a concomitant power of supervision and regulation to prevent injury and loss to their members; and it is said that this court affirmed the principle inHopkins Federal Savings and Loan Association v. Cleary (No. 55, October term, 1935, decided December 9th, 1935),296 U.S. 315; 80 L.Ed. 209; 56 S.Ct. 235; 100 A.L.R. 1403. We have no disposition to qualify what was there said. We recognize that these associations, like banks and public service companies, are subject *Page 162 
to a degree of regulation which would be unnecessary and unreasonable in the case of a purely private corporation. But laws touching building and loan associations, like those affecting banks or utility companies, must be confined to purposes reasonably connected with the public interest as distinguished from purely private rights. The legislature has no greater power to interfere with the private contracts of such corporations * * * under the pretext of public necessity, than it would have to attempt the same ends in the case of a private corporation. Though the obligations of contracts must yield to a proper exercise of the police power, and vested rights cannot inhibit the proper exertion of the power, it must be exercised for an end which is in fact public and the means adopted must be reasonably adapted to the accomplishment of that end and must not be arbitrary or oppressive.
"As we have pointed out, the questioned sections deal only with private rights, and are not adapted to the legitimate end of conserving or equitably administering the assets in the interest of all members."
The same principle is enunciated by this court in the case ofIn Re Mechanics Trust Co., 119 N.J. Eq. 141, in which, interalia, it was said:
"While the United States constitution prohibits a state from passing a law which will impair the obligation of contracts, the prohibition does not remove from state control the rights and properties which depend for their existence upon the enforcement of contracts as to relieve them from the operation of such general regulations for the good government of the state and the protection of the rights of individuals as may be deemed important.
"Powers, the exercise of which can only be justified on the specific ground that they are police regulations, and which would otherwise be clearly prohibited by the constitution, can be such only as are necessary to the safety, comfort or well-being of society, or so imperatively required by the public necessity, as to lead to the conclusion that the framers of the constitution could not as men of ordinary prudence and foresight, have intended to prohibit their exercise in the *Page 163 
particular case, notwithstanding the language of the prohibition would otherwise include it.
"The banking business is charged with the public interest and it is subject to regulation under the police power of the state; consequently, the rights of all persons having a direct contact with that business may be altered and changed in a reasonable manner.
"The police power is a permanent right of sovereignty, and its exercise is not dependent upon an emergency.
"An emergency does not create or bestow legislative power not otherwise constitutionally existing, but it may furnish the occasion and necessity for the exercise of such power.
"The exercise of the so-called reserve power must be reasonable under the conditions, and the legislation must have a substantial relation to its object and must not be arbitrary or discriminatory."
Section 2 of chapter 3, laws of 1934, is intended to conserve and equitably administer the assets of the involved corporation in the interests of investors, the public and others. That intention is clear. The result sought to be obtained by the legislature is one that is obviously beneficial to the public — the conservation, rehabilitation, reorganization or liquidation of corporations in which millions of dollars of the public's funds have been invested. It may be said that private rights are affected only incidentally, and that when the public good is considered, it is only an immaterial factor since the end accomplished is a legitimate one — the one the legislature had in mind, the public good. Chapter 3 of the laws of 1934 stands out in the fullness of strength, and has for its end, the public good; whereas, the Louisiana statute, carefully scrutinized in the Treigle Case, is found by the court to be weak, and lacking. Our legislature has declared that a trustee appointed under the 1934 statute is to conserve, rehabilitate, or liquidate a mortgage guaranty corporation, and that all the assets thereof, whether held absolutely, or by another upon a trust, shall be administered in a single trust or administration suit, by a single trustee as the act directs. The statute is, in effect, a pronouncement against divided *Page 164 
control of the title company's assets. An enactment of that kind should not be regarded as unsound, unreasonable, arbitrary or oppressive; it is adapted to the means sought to be obtained. TheTreigel v. Acme Association Case, supra, most definitely negatives the proposition that the statute involves an unconstitutional impairment of the obligation of contract. It cannot be said that the legislature did not overlook the prospect of an attack upon the act upon constitutional grounds, for it provided for such a contingency in the twenty-seventh section of the law, which recites:
"This act is enacted under the police power of the legislature with respect to the corporations affected, such corporations being deemed by the legislature to conduct a business charged with a public interest, and under the power of the legislature to alter or repeal charters of corporations and to change corporate powers * * *."
The same section (twenty-seven) further expresses the existence of an emergency, and enacts that any provision that can be sustained as emergency legislation shall be sustained. Section 2 of the act does not depend for its validity upon the emergency powers of the state; while section twenty-seven thereof removes all doubts and uncertainties by explaining the reasons for the enactment. Krimke v. Guarantee Building and Loan Association,112 N.J. Law 317; Hourigan v. Township of North Bergen, supra;State, ex rel. State Board of Milk Control v. Newark Milk Co.,118 N.J. Eq. 504; Nebbia v. New York, 291 U.S. 502;78 L.Ed. 940; Home Building and Loan Association v. Blaisdell, supra.
The Hourigan Case, supra, lays down the principle that a statute may be enacted as a valid emergency measure even though the period of its effectiveness is not limited by its terms. The same rule was followed in Kipp v. Fidelity Title and MortgageGuaranty Co., 116 N.J. Eq. 409; affirmed, 117 N.J. Eq. 588, in upholding the validity of the statute under consideration in the instant case.
The term "trustee" mentioned in chapter 3 of the laws of 1934, for the purpose of the act, may be said to be a term interchangeable, or synonymous with the term "receiver." Section 3 of the act reads, in part, as follows: *Page 165 
"* * * provided that no additional guaranties or similar obligations shall be created; except as hereinafter mentioned,all such powers as might be conferred upon a receiver of such acorporation by the court in the conduct of its business * * *."
The act gives the trustee the same powers as equity ordinarily extends to receivers named by it. It has been held that the appointment of a trustee is a ministerial act and one which may be properly exercised by the legislature. Tindal v. Drake,60 Ala. 170; Hindman v. Piper, 50 Mo. 292; Williamson v. Suydam,supra.
The National Banking act empowers the comptroller of the treasury to appoint a receiver for an insolvent national bank. It has been held that the exercise of this power by the comptroller does not offend the constitutional prohibition against delegation of powers. Bushnell v. Leland, 164 U.S. 684; 41 L.Ed. 598. It appears that the power to appoint a receiver is not one that is vested solely in the judicial branch of the government. There is no constitutional inhibition against the legislature appointing trustees, even though the trustees so appointed are virtually receivers.
It has been urged that the mandatory provision of section 2 of chapter 3 of laws of 1934, viz., "and thereupon the commissioner of banking and insurance shall become trustee" is an attempt to limit the inherent power of equity to appoint and remove trustees. I do not take that view. In my opinion, the section enlarges the jurisdiction of equity. Equity's inherent powers in cases like the instant one, are fully discussed by Vice-Chancellor Berry in Smith v. Washington CasualtyInsurance Co., supra. I do not say that the 1934 act does not include powers which this court has inherent jurisdiction to exercise. It includes others, however; notably, the power to liquidate, which may be exercised by the court only when authorized by statute. Smith v. Washington Casualty InsuranceCo., supra. Mr. Justice Heher, speaking for the court of errors and appeals in State, ex rel. State Board of Milk Control v.Newark Milk Co., supra, said:
"While the legislature has not the competency to impair *Page 166 
the essential nature or jurisdiction of any of the constitutional courts, an enlargement of the jurisdiction is not such an impairment, at least if it is not incongruous with the general character and nature of the court. There is no disregard of the constitutional mandate if the new jurisdiction places within the court's control a new class of cases in complete harmony with its structure."
The additional powers conferred upon this court by chapter 3, laws of 1934, are not inconsistent with the court's inherent structure. The legislature may enlarge the jurisdiction of the court, and define such enlarged powers in the manner in which it shall be exercised. I feel that section 2 of the 1934 act affirmatively withstands any and all attacks against its unconstitutionality for the reasons hereinabove set forth.
I am satisfied the title of the act in question conforms to the provisions of the state constitution. Under all the circumstances there being no valid objections to the adoption of paragraphs 4, 11, 13, 19, 21 and 41 of the order to show cause, dated July 11th, 1935, and they being concomitant to the powers of the petitioning trustees, then that part of the order embracing those paragraphs should, and will, be made absolute. I shall advise an order to this effect.